LOTTINGER, Judge.
This is a tort action for personal injuries sustained by Mary Sedotal, wife of Leodas J. Freyou, and a three year old child (the latter’s grand-child), Cheryl Ann Darcey, as a result of an automobile accident which occurred in the Parish of St. Martin on October 14, 1951, at about 4:15 o’clock A.M. The minor, Cheryl Ann Darcey, appears through her father, William Dar-cey. Joined as party defendants are: 1) Southern Farm Bureau Casualty Company, liability insurer of the automobile owned and operated at the time by the husband, Leodas J. Freyou; 2) A. R. Blossman, Inc., owner of a truck involved in the collision; 3) Fidelity and Casualty Company of New York, liability insurer of A. R. Blossman, Inc. and, 4) Willies St. Julian, owner and driver of an automobile which was also involved in the accident.
The petition sets forth that at about 4 o’clock A.M. on the morning of the accident the plaintiffs were passengers in a Studebaker automobile owned by Freyou and being driven by him at the time on U. S. Highway No. 90 between the cities of New Iberia and Lafayette in the direction of the latter. It goes on to set out that upon reaching a point about four miles East of the town of Broussard, Freyou observed a truck owned by A. R. Blossman, Inc. approaching from the opposite direction. At this time the highway was in darkness and Freyou was proceeding at a rate of from 60 to 65 miles per hour with his wife and the minor seated beside him on the front seat. When the two vehicles were approximately one-half mile apart, it is alleged that Freyou observed the approaching truck which dimmed its lights, whereupon Freyou did likewise. The further allegation is made that following the dimming of the lights of the respective vehicles, both drivers continued to operate at an excessive rate of speed. Midway between the two vehicles, the petition sets out that there was situated a third vehicle, a Chevrolet Sedan owned by Willies St. Julian, which was parked in the West Bound lane with no lights burning. Both drivers are alleged to have continued to proceed in their re *155 spective directions until reaching a point 50 feet from the parked Chevrolet automobile. Negligence is charged against Fre-you, in continuing to drive in such a manner until he was so close to the parked Chevrolet that he was unable to avoid crashing into the rear of same, whereupon he turned to the left into the path of the oncoming truck. Negligence is charged against the truck driver in continuing to proceed at a time when he saw or should have seen the parked Chevrolet without lights or other signals, knowing that a situation of danger existed, and that Freyou would have to •crash into the rear of the parked Chevrolet •or turn to his left into the path of the truck. The answer of A. R. Blossman, Inc., and •of Fidelity and Casualty Company of New York admits the charges of negligence which were levelled against Freyou and St. Julian but denies any negligence on the part of the truck driver, one Huey Welch, and further sets forth that Welch did all within his power to avoid the accident. An alternative plea of contributory negligence is levelled at the plaintiff, Mary Se-dotal, said negligence being her failure to warn Freyou to desist from driving at an excessive rate and her failure to warn him of the parked vehicle in his path. The answer of the Southern Farm Bureau Casualty Company denies any negligence on the part of Freyou and sets forth that the accident was caused as a result of the negligence of St. Julian and the truck driver, Welch. In the alternative it is pleaded that the plaintiffs were not guest passengers of Freyou but were on a joint venture together with him and that, therefore, the automobile in which they were riding at the time was under the joint control and direction of Mary Sedotal, Cheryl Ann Darcey and Leodas J. Freyou. The further allegation is made that plaintiffs had full opportunity to see everything that Freyou did and that they were negligent in failing to warn him of impending danger.
The case was tried in the court below before a jury which returned the following verdict:
“We find the Fidelity Insurance Company of New York and A. R. Blossman, Inc. Not Guilty of Negligence.
“We find Willies St. Julian Guilty of negligence for the amount of $7,500.00 for Mrs. Mary Sedotal and $250.00 for Cheryl Ann Darcey.
“We also find the Southern Farm Bureau Insurance Guilty of negligence to the amount of $3,500.00 for Mrs. Mary Sedotal and $250.00 for Cheryl Ann Darcey. Joe Rousseau, Foreman.”
Following the rendition of the verdict, the trial judge instructed the jury that it could not apportion the damages as between the two defendants found guilty of negligence but that any judgment would have to be for one sum in an in solido amount against said defendants. The jury thereupon returned to redeliberate and subsequently rendered the following verdict:
“We find the Fidelity Insurance Company of New York and A. R. Blossman, Inc. Not Guilty of Negligence.
“We find Willies St. Julian and Southern Farm Bureau Company, Inc. guilty of negligence for the amount of $5,000,00 for Mrs. Mary Sedotal and $500.00 for Cheryl Ann Darcey. Joe Rousseau, Foreman.”
From this jury verdict the plaintiffs moved for a devolutive appeal and the defendant/Southern Farm Bureau Casualty Company moved for a suspensive, and, in the alternative, a devolutive appeal.
There is no dispute as to the liability insurance coverage of the two companies involved. The coverage of Southern Farm Bureau Casualty, Inc., insurer of the Fre-you automobile provides for a maximum liability to one person of $10,000 and a maximum liability for one accident of $20,-000. The maximum liability of the Fidelity and Casualty Company of New York is $20,000 for one person and $20,000 for one accident.
The record discloses that at about 3:30 or 3:45 A.M. on the morning of October *156 14, 1951, Leodas J. Freyou left his home in his Studebaker automobile for the purpose of going- to Mansura, Louisiana, to locate field labor to assist him in harvesting his sugar cane crop. He was accompanied by his wife, Mary Sedotal and their grandchild, Cheryl Ann Darcey, the latter being seated in Mrs. Freyou’s lap, who was sitting in the front seat of the automobile be-' side her husband. Also in the automobile was Mr. and Mrs. Freyou’s son, Larence Freyou, who was on the back seat, asleep. He sustained no injuries and apparently knows nothing of the facts surrounding the accident.
Just before the accident, Freyou was driving on U. S. 90 between New Iberia and Lafayette in .the direction of the latter. He was proceeding at 'from 55 to 60 miles an hour with the weather being dark and rather. foggy. The road at this point is a paved highway and was straight and level.
The Chevrolet automobile of Willies St. Julian, was parked on U. S'. Highway No. 90, facing Lafayette, with its two right wheels off of the paved portion of the highway leaving approximately % of the vehicle parked on the paved portion of the road. It is shown that the location of this car was approximately 1180 feet from a dip in the highway to the East. Between this dip and where the St. Julian car was parked, the paved road is straight and level. It is also shown that the parked vehicle had no lights burning and that just prior to the collision, the Blossman and Freyou vehicles approached with their dimmers on.
It seems clear that Mr. Freyou did not see the St. Julian vehicle until he was almost upon it. At one point he stated that he was only 12 feet away when he first ob-sérved it although at another point in his testimony he estimated this distance at being 50 feet. He did not reduce his speed, which he states was at from 55 to 60 miles per hour, and. apparently did not apply his brakes. According to the testimony, at the most, all he did was to make a slight’ attempt to apply his brakes and turn to the left in an attempt to avoid colliding with the parked car. It appears from .the photographs- introduced that only the slightest amount of damage was done to the right front side of the Freyou vehicle which evidently grazed the rear of the St. Julian vehicle and almost simultaneously struck the A. R. Blossman, Inc. truck.
 From the above and foregoing we experience no difficulty in concluding that the Jury was eminently correct in finding both St. Julian and Freyou guilty of negligence. In so far as St. Julian’s negligence-is concerned there is no question that he parked on the highway in violation of LSA-R.S. 32:241, that is, parking on the-main traveled portion of the highway and particularly at night without lights and that same was a proximate cause of the-accident. In so far as the negligence of Freyou is concerned, the general rule is-well established in this state to the effect that it is the duty of the operator of an automobile, while driving at night, to operate-said automobile in such a manner that it can be stopped within the range of. vision-illuminated by the headlights of the car. It is also well settled that there may be exceptional circumstances which will serve to-exculpate a driver who, because of those-exceptional circumstances and in spite of due diligence, fails to discover some obstruction or some other vehicle on the road ahead of him, and that no fixed rule may be-laid down by which it may be determined' just what will constitute such exceptional circumstances. Woodall v. Southern Scrap-Material Co., La.App., 40 So.2d 495; Hemel v. United States Fidelity & Guaranty Co., La.App., 31 So.2d 38; Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377; Louisiana Power & Light Co., v. Saia, 188 La. 358, 177 So. 238; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720; Rea v. Dow Motor Co., La.App., 36 So.2d 750; Buford v. Combs, La.App., 50 So.2d 469.
It is to be remembered that St. Julian’s-Chevrolet was parked on the highway with its two right wheels off the paved portion leaving approximately two-thirds of the-vehicle parked on the paved portion of the-road. Mr. Freyou stated that the weather *157 was a little foggy but that it did not interfere with his vision and that he could see far enough ahead but it was a dark night. It was not cloudy but it was dark because of the time of the morning. It is likewise interesting to note what Mr. Freyou had to say with reference to his speed and the lights of his car and the Blossman truck:
“Q. As you feel now you fix the speed at between 55 and 60, is that correct? A. Yes sir.
“Q. Now, as you approached the scene of the accident, Mr. Freyou, what happened when you reached the crest of that hill, the top of that hill?
A. What you mean ?
“Q. What did you see? A. I seen some lights, car lights coming on the road.
“Q. About how far were those lights from you? A. Well, I say. it was just about a half mile, maybe not that much.
“Q. Now, that was when you got to the top of that crest that you saw that? A. I did.
“Q. Were those lights bright or were they dim? A. Well, he called for dim, he put his lights on dim and I put mine on dim too.
“Q. Now when you put your lights on dim, he put his lights on dim, did the lights of the truck still bother you any? A. Well they was, a little.
“Q. In other words even after they were dim they still bothered you? A. They were still a little bright.
“Q. They were glaring? A. Yes sir.
“By Mr. Christovich.
“At this time as far as Fidelity & Casualty Company of New York and A. R. Blossman is concerned I’m going. to object to any of this testimony enlarging the pleadings or the cause of action that has been alleged by the plaintiff.
“By the Court.
“It is understood that .the testimony of this witness will not be construed so as to enlarge the pleadings of the plaintiff against the Blossman corporation and its insurer.
“Q. Did those glaring lights of that truck interfere with your vision ahead of you? A. Well, a little.
“By the court.-
“It is recapitulation perhaps.
“Q. Now, Mr. Freyou, did you see anything in the road in front of you?
A. Well, I did. I was about 12 feet from it, I seen an automobile.
“Q. What was it? A. It was a car, an automobile. ■ ,
“Q. What did it look like? A. ■ Well,-it looked like a car:
“Q., Was it on the pavement or on the shoulder? A. The two right wheels was off the pavement and the rest of. it was on the pavement.
“Q. Now with reference to your lane of traffic, by that I mean from the black line to the edge in which you were driving? A. Yes sir.
“Q. Did that car cover, up your whole lane of traffic or what part of the lane of traffic did it cover? A. Well, it covered % of my lane. He had his right wheel off the pavement and all the rest of the car was on the pavement.
“By the Court.
“Q. He asked you what part of the pavement did it occupy, what part of your lane of traffic did the car take? How much of it? A.- It took better than half of my part.”
- We do not think that the lights of the -Blossman truck blinded Mr. Freyou, because the lights of both vehicles were on dim. Be that as it may however, if -the lights of-the.Blossman truck were blinding: to Mr. Freyou for that distance he should have retarded -his speed so as to. have his *158 car under proper control but we do not think from the testimony in this record that the Blossman lights blinded Mr. Fre-you or interfered with his vision at any time. We are of the opinion that if Mr. Welch, the driver of the. Blossman truck, could see the St. Julian car and recognize it as such on the opposite side of the highway when he was 150 feet from the St. Julian vehicle we see no reason why Mr. Freyou could not have likewise seen the St. Julian vehicle when he was that same distance or further away from the said vehicle since they were on the same side of the highway. The St. Julian vehicle is an ordinary vehicle the color of which is not stated in the record but it occupied better than one-half of Mr. Freyou’s traffic lane and his lights should have been able to pick up the S't. Julian car further down the highway in time to avoid the accident. . There were no peculiar weather conditions or circumstances prevailing at the time but we are of the firm belief and opinion that the said Freyou was negligent under the circumstances, that is, operating his automobile in such a manner that he could not stop within the range or vision of his headlights or he did not see what he should have seen in time to avoid the accident and that his negligence is a proximate cause of the accident. The jury was evidently of this same belief; so was the Lower Court and we cannot find any manifest error in their findings. The remaining questions therefore, concern the negligence, if any, of the driver of the A. R. Blossman, Inc. truck and the plaintiffs’ damages.
With respect to Mrs. Freyou, we find nothing in the record which would tend to show that she was on a joint venture with her husband. He alone apparently managed the farm and she and the grandchild were apparently going on the trip simply for the ride. Having concluded that she was only a guest passenger, she would not be expected to keep the same careful look-out as the driver himself. We do not believe that the record as a whole shows that she was sufficiently aware of the impending danger to have done anything other than she did. Certainly there is nothing in the record which would warrant a reversal of the jury’s finding of fact on this score.
The record states that Huey Welch was operating a very large vehicle consisting of a tractor and tank trailer with an overall length of some 42 feet. He testified that just before the accident he was proceeding in his lane of traffic at approximately 43 miles an hour with the usual lights burning on the front, side and back of the vehicle. He stated that when he first noticed the approaching Freyou car, the two vehicles were approximately a mile away and that when they were about a quarter of a mile from each other, he dimmed his lights whereupon Freyou did likewise. He testified that when the two vehicles were about 600 feet apart, he first noticed an obstacle to his left front but did not at that moment attach any significance to this fact. Shortly, thereafter, when he determined that the object was a parked car, he stated that he moved over as far as he could in the event the oncoming automobile intended to pass the parked car. According to Welch, he was about 150 feet from the St. Julian vehicle when he realized what it was and at this time Freyou was some 200 feet behind the parked car. At this time Welch testified that he attempted to take his truck off the roadway and onto the shoulder as quickly and safely as he could, applying his brakes at the same time. The collision occurred when he was opposite the parked car, and, according to him, completely off the road, proceeding at only 20 to 35 miles per hour.
There is some dispute as to the location of the truck when it was struck by Freyou, as the latter testified that the accident occurred on the paved portion of the highway in the truck’s lane of travel. Be that as it may, however, and taking the record as a whole, we are satisfied that Welch did his best to avoid the accident and we are of the opinion that the jury was correct in absolving him from being guilty of negligence.
There remains for consideration the question of Quantum. Counsel for the plaintiffs admit that the amount of $500 for *159 the minor, is adequate and hence we will leave same undisturbed.
There seems to be no question but that Mrs. Freyou suffered most severe and disabling injuries. She suffered a fracture dislocation of the left ankle; both bones of the left leg, that is the tibia and the fibula, were also broken, accompanied by a dislocation of the joint which the physician in this case termed fracture dislocation. It is apparent that the attending physician, Dr. St. Dizier experienced much difficulty in resetting the femur into the hip socket and was compelled to call in an Orthopedic Surgeon, Dr. James Gilly, to assist him. Dr. Gilly succeeded in resetting this joint only by cutting away the flesh from the bone so that the joint could be placed back in its original position into the socket of the hip bone. The patient then had to be placed in a cast from the margin of her ribs all the way to the toes on the leg which had been broken and to the knee of the unaffected leg. She was removed to her home where she remained in bed on her back for a period of thirty days. She was then put back into the hospital at which time the cast was removed, but because of insufficient healing of the ankle fracture, another ankle cast was applied which remained in place for a period of six weeks. Approximately three months after the injury, this plaintiff was allowed to do some walking with shoes which had orthopedic correction during which time she wore an elastic stocking. She began by using crutches and after a period of time began using a cane. Dr. Gilly examined this patient in September of 1952 and again in January of 1953 when he found a restriction of motion in the hip of approximately 50 per cent. He also found muscle spasm with limit of movement in the left ankle. He also discovered a degeneration of the hip joint which he termed Asceptic Necrosis which, he defined, as the process of becoming dead without infection. Mrs. Freyou is a 48 year old woman and it appears uncontra-dicted that not only has she suffered, but that she will be faced with pain and disability for the rest of her life. We are impressed by the fact that defense counsel did not attempt to introduce any medical evidence to contradict the findings of the doctors who testified on behalf of Mrs. Freyou. As has often been said before, it is impossible to properly evaluate personal injuries. Taking into consideration, however, the extended pain and disability suffered by her, we believe the jury’s award to be inadequate, and think that an award of $10,000 will do substantial justice.
For the reasons assigned, the verdict appealed from is hereby amended to increase the quantum of damages to be awarded to Mrs. Mary Sedotal Freyou to the amount of $10,000; in all other respects, the verdict appealed from is affirmed.
Judgment amended and as amended affirmed.
Rehearing denied.
TATE, J., recused.
CAVANAUGH, Judge ad hoc by appointment.