HARDY, Judge.
This is a suit for damages in the nature of personal injuries sustained by plaintiff, a pedestrian, who was struck by a cab belonging to defendant and operated by one of its employees. A petition of intervention was filed by Confederate Memorial Medical Center claiming the sum of $219.48 for hospital services rendered to plaintiff. After trial before a jury there was judgment in favor of plaintiff in the principal sum of $6,-000, and there was further judgment in favor of intervenor, Confederate Memorial Medical Center, in the sum of $219.48. From this judgment defendant has appealed. Plaintiff has answered the appeal praying that the amount of the judgment be increased to $67,000.
The accident which gave rise to this suit occurred about 7:35 A.M. on November 4, 19S4, at the intersection of Christian and Travis Streets in the City of Shreveport. The streets in the downtown section of Shreveport are not oriented with the points of the compass but, in this opinion, it will be considered that Travis Street, which is 36 feet in width, runs east and west, and Christian Street, which is 24 feet in width, runs north and south. Neither of these streets occupies the status of a right-of-way thoroughfare.
At the time of the accident the weather was cloudy and the pavement was damp. Plaintiff, who had been walking south on the sidewalk along the west side of Christian Street, was engaged in crossing the inter *366 section of Travis Street with the intention of boarding a trolley bus of the Highland route headed east on Travis Street, which was parked at the regular bus stop on the south curb of Travis Street at the southwest corner of the intersection, for the purpose of receiving and discharging passengers. At the same time a trolley bus of the Linwood Avenue line, approximately 39 feet in length and 8 feet in width, had come to a stop at the north curb of Travis Street at the northeast corner of the intersection, also for the purpose of receiving and discharging passengers.
Defendant’s cab, operate.d by its employee, Levi A. Stewart, and transporting a passenger by the name of Archie Laird, was proceeding west on Travis Street at a speed variously estimated to be from 25 to 35 miles per hour. The cab had been following behind the Linwood Avenue trolley in the extreme north lane of Travis Street and when the trolley came to a stop at the intersection with Christian Street the cab driver pulled his vehicle to the left, for the purpose of passing the trolley, and struck the plaintiff at a point in Travis Street at or slightly beyond the west line of the intersection of Christian Street some 13 feet south of the north curb line of Travis Street. The point of impact with the cab was the right front headlight and fender, the force of the collision breaking the light and denting the fender. Plaintiff was carried by the cab for a distance of some 20 feet before she fell off of the fender onto the pavement to the right of the vehicle. The testimony shows that the brakes of the cab were applied, and measured marks indicate that the tires skidded for approximately 11 feet before the impact. The cab was brought to a stop some 29 feet beyond the point of the collision.
The record contains the testimony of four eyewitnesses to the actual occurrence of the accident' — Elnorah Winn, the plaintiff ; Levi Stewart, the driver of the cab; Archie Laird, the passenger in the cab, and Freddie Elmore, a colored man who was preparing to board the- Highland trolley at the southwest corner of the street intersection. Other testimony bearing upon the occurrence of the accident was supplied by the driver of the Linwood trolley, who observed nothing until he glanced toward the actual scene of the collision just as the impact occurred, and by two police officers who appeared at the scene shortly after the occurrence of the accident.
The testimony of the witnesses, as is to be expected in cases of this nature, is sharply conflicting, and with reference to some questions of fact is entirely undependable. We find little of value in the testimony of the driver of the Linwood trolley, whose observation was limited to the time of and immediately following the impact, and the testimony of the police officers", which appears to be based almost exclusively upon hearsay and assumption. The testimony of plaintiff, Laird and Elmore is most favorable to plaintiff’s contention and is contradicted only by the testimony of the driver of the defendant’s cab.
The issues of negligence on the part of defendant’s driver, contributory negligence on the part of plaintiff, and the applicability of the doctrine of last clear chance are dependent exclusively upon the resolution of questions of fact. Careful consideration of the transcript of almost 400 pages of testimony has served to convince us that the verdict of the jury is amply supported by the preponderance of such testimony. We do not find it necessary to give detailed consideration to an analysis of the testimony of each of the witnesses. It will suffice to say that we were impressed with the validity and the effect of the testimony of the witness, Laird, a disabled Korean war veteran, who was a passenger in the cab, seated on the right-hand side of the front seat of the vehicle, and who had no relationship with nor interest in any of the parties involved; It is quite clear to us that defendant’s driver had been following behind the Lin-* wood trolley bus, which effectively obscured his view of the intersection of Travis and Christian Streets, which he was approach'- *367 ing; that as the trolley slowed and came to a stop at the northeast corner of the intersection defendant’s driver pulled out toward the center of Travis Street and began his passing operation without taking necessary precautions with reference to observation for either vehicular or pedestrian traffic entering Travis Street from the north and without maintaining proper control of his vehicle. The fact that the operation in which defendant’s driver was engaged at the time, considering all the circumstances, was highly dangerous and called for the exercise of extreme care and caution, is so obvious that it scarcely calls for comment. Yet the driver of the cab did not slacken his speed nor did he make any particular effort in the nature of careful observation. Even if we accept the story of the driver himself that he observed plaintiff in the act of crossing the street at a time when his cab was removed by the width of the Christian Street intersection and more than half the length of the parked Linwood trolley, we would be at a loss to explain why the driver ran down the plaintiff. We think it is clear that the situation called for the exercise of a high degree of care and the failure of defendant’s driver to observe and react to such an obvious need constituted a rather gross degree of negligence which was the sole and proximate cause of the accident.
We find nothing in the record which would give substantial support to the charge of contributory negligence. The plaintiff, before stepping from the curb into the Travis Street crossing, made observation in both directions. It must be borne in mind that the parked Linwood trolley effectively obscured the approach of defendant’s cab from plaintiff’s view, and it was only after she had preempted the intersection and proceeded an appreciable distance into Travis Street that it would have been possible for her to observe the approach of the cab, even if its speed at the time was not more than 25 miles per hour. We find no element of negligence in plaintiff’s action.
The above findings, which are predicated entirely upon our evaluation of the established facts in the instant case, obviate the necessity of a consideration of the applicability of the doctrine of last clear chance.
In our opinion, the most serious question which is presented in the instant case concerns the quantum of damages. Plaintiff is a colored woman, five feet six inches in height, weighing 180 pounds, who was 52 years of age at the time of the accident, and regularly employed as a maid at the P. & S. Hotel at a salary of $20 per week. As established by the testimony, plaintiff had an excellent work record up to the time of the accident. The trial of this case began on February 4, 1957, exactly twenty-seven months after the accident, and it is plaintiff’s contention that at the time of trial she was still totally and, as she believed, permanently disabled by reason of pain and discomfort directly resulting from the injuries sustained.
There can be no question as to the serious nature of plaintiff’s injuries which consisted of compound fracture of the tibia and fibula of the left leg; a severe laceration of the back of the left hand which severed the extensor tendons of the third and fourth fingers; a fracture of the fifth metacarpal of the left hand; multiple fractures of the left pelvis involving the sym-phis pubis, the left pubic and ischial rami; cerebral concussion; a ruptured blood vessel in the right eye, and multiple bruises, lacerations and abrasions of the body, particularly on the left side.
Following the accident plaintiff was removed to the Confederate Memorial Medical Center where her injuries were attended. An open reduction of the fractures of the left leg was undertaken; a hole was reamed to provide entry into the tibial shaft and a Lottes’ nail, which appears to be a metal rod soma twelve and one-half inches long and approximating the diameter of a pencil, was driven through the medul-lary canal of the tibia. The medical testi *368 mony establishes the fact that the upper end of this intermedullary rod extends some-seven-eighths to one and one-fourth inches above the bone into the soft tissue of the leg.
Plaintiff was unconscious for a period of some eight hours, more or less, following the accident; was confined to the hospital for 23 days before being removed to her home, where she was forced to remain almost immobile for a period of some five weeks; was unable to leave her bed without assistance for a period of approximately five months; walked with the aid of two crutches for a period of about one year, and with one crutch for an additional period of some months; and at the time of trial walked with the aid of a cane. According to plaintiff’s testimony, she suffered severe and unremitting pain day and night for a period of approximately fifteen weeks, and continued to suffer considerable, though intermittent, pain as of the time of trial.
As is to be expected, the medical testimony and the evaluation of the duration, extent and effect of plaintiff’s injuries is conflicting and provides no satisfactory basis for any nature of accurate determination. We have no doubt as to the fact that plaintiff suffered a long period of total and permanent disability, which we are convinced endured, at the time of trial twenty-seven months following the accident, and, in our opinion, would continue to exist for a substantial period thereafter. However, we do not believe that plaintiff suffered a total permanent disability. The medical testimony indicates that the pain which plaintiff suffers by reason of the projection of the intermedullary rod into the soft tissues could be relieved by the removal of the rod. As to the lasting effects of her injuries, we think it is entirely reasonable to conclude that plaintiff will suffer some degree of discomfort, pain and inconvenience for the remainder of her life, and that she will be unable to perform all the duties of her accustomed employment as a cleaning maid with the ease which marked her work prior to the accident. This indicates the continuance of some nature and degree of partial disability which cannot be accurately estimated by medical or lay opinion. However, as we have above indicated, we do not feel that plaintiff will suffer such serious future disability as will prevent her from obtaining and holding employment in the performance of the services of a house maid or cleaning maid. After serious consideration of all the factors involved, we have concluded that the award of damages which was made by the jury was inconsistent with the serious nature and effects of the injuries sustained by plaintiff and that it should be substantially increased.
For the reasons assigned the judgment appealed from is amended by increasing the amount of damages awarded in favor of plaintiff to the principal sum of $10,000, and, as amended, the judgment appealed from is affirmed at appellant’s cost.