159 So.2d 746 (1964)
Wilbur Joseph CORMIER, Plaintiff and Appellee,
v.
TRADERS & GENERAL INSURANCE COMPANY et al., Defendants and Appellants.
No. 1005.
Court of Appeal of Louisiana. Third Circuit.
January 15, 1964.
Rehearing Denied February 6, 1964.
Writ Granted March 11, 1964.
*747 Hall, Raggio & Farrar, by J. L. Cox, Jr., Lake Charles, for defendant-appellant-appellee.
Plauche & Stockwell, by Fred H. Sievert, Jr., Lake Charles, for defendant-appellee-appellant.
Francis E. Mire, Lake Charles, for plaintiff-appellee.
Before SAVOY, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is a damage suit arising out of a collision which occurred in Cameron Parish between an automobile being operated by Mrs. Ivy Mae Scalisi and an automobile being driven by J. P. Constance. Wilbur Joseph Cormier and Mrs. Lee Ann Fontenot were guest passengers in the Scalisi car at the time of the accident. The suit was instituted originally by Cormier against Constance and his public liability insurer, Traders & General Insurance Company. After the suit was filed Mrs. Scalisi, the driver, and Mrs. Fontenot, the other guest passenger in her car, intervened claiming damages for injuries allegedly sustained by them as a result of the accident. The defendants answered denying that Constance was negligent, and specifically alleging contributory negligence on the part of plaintiff and both intervenors. Defendants also instituted a third party action against State Farm Mutual Automobile Insurance Company, the public liability insurer of Mrs. Scalisi, demanding judgment for one-half of any amount which the original defendants may be condemned to pay to Cormier and Mrs. Fontenot.
After trial on the merits, the trial court held that the accident was caused by the joint negligence of the driver of both cars, and that Cormier and Mrs. Fontenot, guest passengers in the Scalisi vehicle, were free from contributory negligence. Judgment accordingly was rendered (1) rejecting the demands of Mrs. Scalisi; (2) in favor of Cormier and Mrs. Fontenot and *748 against the original defendants, Constance and Traders & General Insurance Company; and (3) in favor of third party plaintiffs, Constance and Traders & General, and against the third party defendant, State Farm, for one-half the amount of damages awarded to Cormier and Mrs. Fontenot, subject to the limits provided in the policy issued by State Farm. Appeals from that judgment were taken by Traders & General, State Farm and Mrs. Scalisi. Cormier and Mrs. Fontenot have answered the appeals.
The accident occurred about 12:45 a. m. on May 20, 1962, on State Highway 27, about four miles north of Holly Beach. The highway at that point is a straight, two-lane, blacktopped thoroughfare, running north and south. Constance was traveling in a southerly direction and Mrs. Scalisi was traveling north. The cars collided about the center of the highway, the right front portion of the Constance automobile striking the right front portion of the Scalisi car.
The trial judge correctly analyzed the testimony of the drivers of the two vehicles in his excellent reasons for judgment as follows:
"* * * Mr. Constance testified that he first saw the other car one mile or more distant on the highway; that it had on bright lights and he dimmed the lights on his car and the lights on the approaching car were then dimmed; that the lights were dimmed when the cars were more than 100 yards apart; that he was traveling about 55 miles per hour when he dimmed his lights and slowed down; that the accident happened in the center of the highway; that the other car was coming into his lane of traffic, and he then cut over to his left, in an effort to get out of the way and into the other lane; that his left wheel was in the other lane and the other car's left wheel was in his lane when the collision occurred. He testified that the impact was on the right side of both cars; that his car went off of the road on the east side into a ditch and came to a stop heading east; that the other car stayed on the road, headed in a southerly direction.
"Mrs. Scalisi testified that she first noticed the Constance car's headlight a `long distance off'; that the lights must have been dimmed, because neither driver requested dimming; that she was traveling north in her right lane and, when the other car was still a long distance away, she noticed it was in her lane; that she then blinked her lights and applied her brakes and had come to almost a complete stop when the collision occurred; that she had time to drive on the right shoulder when she first saw the approaching car, but instead waited until he got closer and when the other car got `right at me,' she pulled to the left close to the center line of the highway, hoping the other car would pass on her right; and she did not `think I got across the center line.' Mrs. Scalisi testified that the Constance car was coming partially into her lane, and `angled' toward her car; that Mr. Constance's car struck the front right and right side of her car."
Mrs. Scalisi's statements are corroborated to some extent by the testimony of her two guest passengers, the intervenors herein. The physical facts established by the evidence, on the other hand, indicate that at the time the collision occurred a substantial portion of her car was in Constance's lane of traffic, which is contrary to her version of how the accident occurred. After analyzing and considering all of the evidence, the trial judge held that:
"* * * The physical facts indicate that a portion of each car was in the wrong lane of traffic at the time of the collision, and that the collision occurred in the center of the highway, *749 as described by Trooper Jones. These cars were approaching each other, in the absence of any other traffic on a straight highway, and collided in the center of the highway, without any sudden emergency except such as may have resulted from their concurring negligence in failing to operate their respective automobiles in their own respective lanes of traffic. Each driver testified that the other was coming into or angling into the opposite lane of traffic, and the physical facts confirm their testimony in that respect. The Court does not believe the accident would have occurred if each driver had remained in his proper lane of traffic, as is required when vehicles are approaching each other on a highway. Consequently, the Court concludes that the accident was the result of the joint and concurring negligence of the drivers of the two cars."
We think the evidence supports the conclusions reached by the trial judge. The so-called "sudden emergency doctrine" cannot be invoked here to relieve either driver from responsibility, because each driver materially contributed to the creation of any emergency which may have existed immediately prior to or at the time of the collision. We conclude, as did the trial judge, that both drivers were negligent and that the negligence of each was a proximate and contributing cause of the accident. Since Mrs. Scalisi's negligence was a contributing cause of the accident, she is barred from recovery and the trial court properly rejected her demands and dismissed her intervention.
Defendant Traders & General argues that Cormier and Mrs. Fontenot are barred from recovery by their own contributory negligence. It contends that Mrs. Scalisi was intoxicated at the time the accident occurred, and that Cormier and Mrs. Fontenot voluntarily rode in the car with her, knowing that the driver was under the influence of intoxicants to an extent sufficient to make her lose normal control of her mental and physical faculties or to cause such faculties to be materially impaired. It is argued that the action of Cormier and Mrs. Fontenot in voluntarily riding in the car with Mrs. Scalisi under those circumstances constitutes independent, contributory negligence on their part sufficient to bar them from recovery.
After considering the evidence contained in the voluminous record, including the testimony of 18 witnesses on the issue of the possible intoxication of Mrs. Scalisi, the trial judge concluded that "the evidence preponderates to the effect that she did not indulge in intoxicating liquors and the contention that she did is based upon speculation alone." We think the evidence supports that conclusion. We agree with the trial judge that the evidence produced at the trial was not sufficient to establish that Mrs. Scalisi was under the influence of intoxicating liquors at the time the accident occurred. In our opinion, therefore, the trial judge correctly held that Cormier and Mrs. Fontenot are not barred from recovery by contributory negligence.
The third party defendant, State Farm, contends that the trial judge erred in condemning it to pay to Constance and Traders & General one-half of the damages awarded to Cormier and Mrs. Fontenot. The basis for this contention is that plaintiff Cormier and intervenor Mrs. Fontenot, in their pleadings and in their testimony, have exonerated Mrs. Scalisi, the driver of the car insured by State Farm, of any negligence.
It has been held that under Article 2291 of the LSA-Civil Code a plaintiff may be held judicially estopped from recovering damages against a defendant where the pleadings or testimony of the plaintiff completely exonerates the defendant from any negligence proximately causing the accident. See Thompson v. Haubtman, La.App. Orl., 18 La.App. 119, 137 So. 362; Franklin v. Zurich Insurance Company, La.App. 1 Cir., 136 So.2d 735 (Cert. denied).
*750 In the instant suit, however, Cormier and Mrs. Fontenot have not named State Farm as a defendant in the actions which they instituted, and State Farm has not been condemned to pay anything to either of those claimants. The only action which has been instituted against State Farm is the third party demand which was made against it by Constance and Traders & General. In that action the third party plaintiffs have specifically alleged that Mrs. Scalisi was negligent, and there is nothing in the pleadings or testimony which can be construed as a "judicial admission" by either of these third party plaintiffs that she was free from negligence. As we have already pointed out, the evidence shows that Mrs. Scalisi was negligent. Under these circumstances the "judicial admissions" made by Cormier and Mrs. Fontenot cannot have the effect of estopping the third party plaintiffs from alleging or proving negligence on the part of Mrs. Scalisi, or of barring them from recovery under this third party action. We think the trial judge correctly held that under the facts presented here Constance and Traders & General are entitled to recover from State Farm one-half of the amount which the former were condemned to pay to Cormier and Mrs. Fontenot, subject to State Farm's policy limits.
Mrs. Fontenot in answering the appeal contends that the award made to her as general damages and as reimbursement of her medical expenses should be increased.
Mrs. Fontenot was 19 years of age at the time of the trial, which took place nine or ten months after the accident occurred. Her injuries consisted of a compound comminuted fracture of the tibia and fibula of the left leg, a dislocated left thumb, multiple fractures of the index finger of the left hand, periosteal disruption of the clavicle and subsequent hemorrhage and calcification in that area, and general contusions and abrasions. The fractures of the finger were reduced with good recovery. She was hospitalized for ten days, during which time an open reduction of the leg fractures was performed, that procedure requiring the use of a metal plate and screws. Following her release from the hospital she was confined to bed for one week, then used a wheel chair for approximately three weeks, and thereafter she used crutches until January, 1963, which was approximately eight months after the date of the accident. It has not been necessary for her to use crutches since that time. At the time of the trial she walked with a limp, there was some swelling in her leg when she had been on it, and full strength had not yet returned to her left hand. Her treating physician testified, however, that the limp was a natural reaction to the long period of time in which her leg was in a cast, that the swelling would gradually subside, and that she would regain strength in her hand. He felt that she would fully recover from all of her injuries, but he concedes that she may develop a mild irritation around the ankle joint as a result of the long period in a cast and she could develop traumatic arthritis in the joints of her injured thumb and finger. She also has a scar on her leg resulting from the wound and the surgical procedure employed in reducing the fracture.
The trial court awarded Mrs. Fontenot $5,000.00 for the injuries, pain and temporary disability sustained by her as a result of the accident. In addition thereto he awarded $637.50 for loss of wages and $655.72 as medical expenses, the total amount awarded to her being $6,293.22.
In our opinion the amount awarded to Mrs. Fontenot as general damages is out of proportion with previous awards made for somewhat similar injuries, and we think the award is manifestly insufficient under all of the circumstances presented here. We feel the award to her for her injuries, pain and temporary disability should be increased to $10,000.00. See Stanford v. Bateman Frozen Foods Company, La.App. 1 Cir., 149 So.2d 753 (Cert. denied); Gray v. Great American Indemnity Company, La. App. 1 Cir., 121 So.2d 381; Winn v. Yellow *751 Cab Company of Shreveport, La.App. 2 Cir., 96 So.2d 365 (Cert. denied); and Sedotal v. Fidelity and Casualty Company of New York, La.App. 1 Cir., 77 So.2d 153.
Mrs. Fontenot contends further that the award to her for medical expenses should be increased by $500.00. The evidence shows that the medical expenses which she incurred as a result of the accident amounted to the total sum of $1,155.72. Sometime prior to the trial, however, State Farm paid $500.00 to her to apply on her medical expenses, this being the maximum liability of State Farm under a medical payments provision of the policy which it had issued to Mrs. Scalisi. In determining the amount of damages due Mrs. Fontenot the trial judge credited her with having received $500.00 on medical expenses, and accordingly, the defendants, Constance and Traders & General, were condemned to pay her only the remaining balance of $655.72 as such expenses. Mrs. Fontenot argues that the trial court erred in crediting her with this $500.00 payment, and in relieving defendants, Constance and Traders & General, from liability for that amount. She contends that she is entitled to recover the full sum of $1,155.72 from these defendants in spite of the fact that she has received $500.00 from State Farm.
In Gunter v. Lord, 242 La. 943, 140 So.2d 11, our Supreme Court held that:
"* * * it was not contemplated that an injured person should collect his medical expenses twice, i. e., that having already been paid such expenses at the instance of the insured by the insurance company following the accident, that he should be again awarded the same medical expenses as an incident of the tort action. His damages, in that respect, have been repaired. We think the parties to the contract clearly intended coverage C to provide medical payments in all cases, up to the stated limit, but, in the event of tortious conduct on the part of the insured, that such payments would satisfy the claim for damages normally awarded for those expenditures."
In the case just cited, unlike the instant suit, the payment to the injured person was made by the insurer against which the suit had been instituted. In this case Mrs. Fontenot has made demands only against Constance and Traders & General. She has received no indemnity of medical expenses from either of those defendants, the only payment which she has received being that made by State Farm, against which company she has made no demand.
We are aware of the established rule that when the injured party is wholly or partially indemnified for hospital or medical care by insurance effected and paid for by him or through some other source, and toward which the wrongdoer did not contribute, then the latter cannot benefit therefrom by a reduction of his damages in a suit by the injured party. Gunter v. Lord, supra; Warren v. Fidelity Mutual Insurance Company, La.App. 1 Cir., 99 So.2d 382. We think, however, that this rule is not applicable when the payment of medical expenses is made by a joint tortfeasor who is solidarily liable with the defendant for the damages sustained by the injured person.
In our opinion, when an injured party is wholly or partially indemnified for hospital or medical expenses by one joint tortfeasor, who is solidarily liable with others for such damages, then the other joint tortfeasors are entitled to credit for the payment so made, and the injured party is not entitled to recover the same medical expenses from the other joint tortfeasors. See LSA-C.C. Article 2203; Gunter v. Lord, supra; Mundy v. Continental Insurance Company, La.App. 3 Cir., 147 So.2d 675; Roux v. Brickett, La.App. 3 Cir., 149 So.2d 456; Peats v. Martin, La.App. 2 Cir., 133 So.2d 920; Cudd v. Great American Insurance Company, D.C. W.D. Louisiana, 202 F.Supp. 237; Rice *752 v. Traders & General Insurance Company, La.App. 1 Cir., 114 So.2d 92; Landry v. New Orleans Public Service, Inc., 177 La. 105, 147 So. 698; Guarisco v. Pennsylvania Casualty Co., 209 La. 435, 24 So.2d 678.
In the instant suit we have determined that the injuries sustained by Mrs. Fontenot were caused by the joint negligence of Mrs. Scalisi and Constance. The payment made to Mrs. Fontenot by State Farm, as the insurer of Mrs. Scalisi, was made in behalf of one of these two joint tortfeasors. Under those circumstances we think the other tortfeasor, Constance (or his insurer) is entitled to credit for the payment so made, and that Mrs. Fontenot is not entitled to recover the same amount from the other wrongdoer. This rule applies, we think, even though Mrs. Fontenot has made no demand for damages against Mrs. Scalisi or State Farm. In our opinion the award made to Mrs. Fontenot as indemnity for the medical expenses incurred by her is correct.
Dr. George B. Briel testified as an expert witness as to the injuries sustained by Cormier, Mrs. Scalisi and Mrs. Fontenot. The trial judge allowed him a fee of $150.00 for testifying as an expert. Cormier and Mrs. Fontenot, in answering the appeal contend that the judgment appealed from should be amended by substantially increasing the amount of this fee.
It is proper in fixing expert witness fees to take into consideration the time the expert is on the witness stand, the time required for him to travel to and from the courtroom, and the time he is required to be away from his regular duties to stand by near the courtroom while waiting to be called. Pickett v. Norwich Union Fire Insurance Society, La.App. 1 Cir., 119 So.2d 566. The determination of the amount to be allowed as expert fees, however, is a matter which is largely within the discretion of the trial court, and generally the amount fixed by the trial court will not be disturbed unless it is clearly inadequate or excessive. Coine v. Smith, La.App. 1 Cir., 100 So.2d 902 (Cert. denied); Bernard v. Louisiana Wild Life and Fisheries Commission, La.App. 3 Cir., 152 So.2d 114 (Cert. denied).
In this case Dr. Briel was on the witness stand for less than two hours. His office is in Lake Charles, which is a little more than 50 miles from Cameron where the trial was held, so it was necessary for him to travel a total of something over 100 miles in order to give his testimony and return to his office. The evidence does not indicate that he was required to stand by near the courtroom for an unusually long period of time waiting to be called to the witness stand. Under these facts, we think the expert fee allowed by the trial court is fair and adequate. See Williams v. Martin Timber Company, La.App. 2 Cir., 116 So.2d 323 (Cert. denied); and Honeycutt v. American General Insurance Company, La. App. 1 Cir., 126 So.2d 789.
For the reasons herein set out, that portion of the judgment appealed from which relates to the claim of Mrs. Lee Ann Fontenot is amended and recast to read as follows:
It is further ordered, adjudged and decreed that there be judgment in favor of Lee Ann Fontenot and against J. P. Constance and Traders & General Insurance Company, in solido, in the sum of Five Thousand and no/100 ($5,000.00) Dollars, with legal interest thereon from date of judicial demand, until paid, and for all costs incident to her intervention, and further, judgment is rendered in favor of Mrs. Lee Ann Fontenot, and against J. P. Constance in the sum of Six Thousand Two Hundred Ninety-Three and 22/100 ($6,293.22) Dollars, with legal interest thereon from date of judicial demand, until paid; and judgment is also rendered in favor of J. P. Constance and Traders & General Insurance Company, third party plaintiffs, against State Farm Mutual Automobile Insurance Company, in the sum of Five Thousand and no/100 ($5,000.00) *753 Dollars, with legal interest thereon from date of judicial demand, until paid, and for one-half of the costs incident to the Fontenot intervention, subject to a credit of $500.00 heretofore paid by State Farm to Mrs. Lee Ann Fontenot.
In all other respects, and as herein specifically amended, the judgment appealed from is affirmed. The costs of this appeal are assessed to appellants.
Amended and affirmed.

On Application for Rehearing
En Banc. Rehearing denied.