REGAN, Judge.
Plaintiffs, Mr. and Mrs. Francis Robi-chaux, residents of Franklin, Louisiana, instituted this suit against Toye Bros. Yellow Cab Company, a co-partnership, endeavoring to recover the sum of $27,424.13, representing damages for the personal injuries suffered by Mrs. Robichaux in the amount of $25,000 and $2,424.13 for medical and other expenses incurred by her husband as the ultimate result of an accident which occurred in St. Charles Avenue, before the entrance to' the Bienville Hotel on April 1st, 1949, at about one-o’clock p. m.
Defendant answered and admitted the occurrence of the accident, but denied that the operator of its ca'b was guilty of any negligence in the premises and, in the alternative, pleaded the contributory negligence of Mrs. Robichaux, whom we shall refer to hereinafter as the plaintiff.
From a judgment in favor of plaintiff in the sum of $8,000 for personal injuries and in favor of Mr. Robichaux for medical and other expenses in the sum of $1,414.63, defendant has prosecuted this appeal. Plaintiff has answered the appeal and requests an increase in the judgment awarded by the court, a qua, in her favor from the sum of $8,000 to the sum of $15,000."
The record reveals simple but the usual embellishment of controversial facts and disputations ad infinitum almost always present in the factual revelation of the manner in which accidents of this sort occur.
The plaintiff was a guest of the Bienville Hotel, which is located on the river side of St. Charles Avenue between Calliope Street and Lee Circle. Upon exiting from the hotel it was her intention to walk across St. Charles Avenue in order to board a trolley car. She testified that before she endeavored to cross St. Charles Avenue she *265 looked in the uptown direction at the semaphore signal light located in the intersection of St. Charles Avenue and Calliope Street and ascertained that it was red thus restraining the movement of St. Charles Avenue traffic; simultaneously she observed a Toye Bros.’ Yellow cab that had just moved away from the curbing in front of the Bien-ville Hotel which, ostensibly was going to proceed in the direction of Lee Circle; that when she reached a point in St. Charles Avenue, about twenty feet from the sidewalk curbing, she was struck by a cab moving in reverse gear, which subsequently was identified as the same cab which she had previously observed moving forward and apparently away from the entrance of the hotel.
Buford Cochran, the operator of the offending cab, testified that he was stopped in the loading zone in front of the Bien-ville Hotel, approximately one foot from the sidewalk curbing; that after his passenger had entered the cab, he walked around the rear thereof, placed himself in the driver’s seat, started the engine, looked over his right shoulder and in the rear view mirror to observe if the rear path was clear, and seeing no one in the rear of his cab, commenced the reverse movement of the cab in its loading zone; that after he had backed the cab two or three feet, he heard Frank Sciortino, the operator of a Yellow cab parked behind him, blow his horn, whereupon he- abruptly applied the brakes and brought his cab to a stop; upon investigation he saw the plaintiff lying in the street behind the rear of the cab in the loading zone, approximately three or four feet from the sidewalk curbing. He was certain that he neither saw the plaintiff before the accident nor was he aware that there was an accident until he stepped out .of his cab and found plaintiff lying in the street.
Only three witnesses testified — -plaintiff, Buford Cochran, the -driver of the yellow cab involved in the accident, and Sciortino, the operator of the Yellow cab parked in the rear of Cochran’s cab.
As will be readily observed from the foregoing revelation of the accident, this matter involves only a question of' fact. The trial judge rendered written reasons for judgment wherein he completely discounted the testimony of Sciortino and he, therefore, based his decision entirely on the testimony of plaintiff and Cochran. He was of the opinion that the offending cab was moving away from the entrance of the Bienville Hotel as Mrs. Robichaux was leaving the curbing thereof and endeavoring to make her way to the car stop located in the neutral ground opposite the entrance to the hotel; for some unknown reason the ca'b changed the course of its movement from forward, to backward and that while, in the act of moving in reverse, Mrs. Robi-chaux was struck by the rear of the cab and knocked to the street which resulted in the injuries which formulate the basis of this suit. The trial judge further found as, a fact that- plaintiff had made certain that there was no traffic approaching from her left, the direction from which she could reasonably anticipate the movement of automotive vehicles, and then. proceeded to cross the street; she had no idea-that a cab which she had observed moving in the opposite direction would reverse its movement and strike her.
 This case involves the application of the well known doctrine that.findings of fact by the trial judge will not be dis- • turbed unless they disclose error. An examination of the record fails to reveal any error in the trial judge’s conclusions.
It is an imperative legal and moral obligation imposed upo-n the operator- of a motor vehicle, particularly when reversing the movement thereof, to do so -slowly - and to ascertain that there is no pedestrian or vehicle situated in the rear thereof.
“To look and not see, what one ■ should see is the equivalent of not looking at all.” :
Neyrey v. Maillet, La.App., 21 So.2d 158.
The only remaining query posed for our consideration is the monetary evaluation of the personal injuries sustained by the plaintiff herein; the defendant does not dispute the award made to Mr. Robichaux for medical and other expenses incurred by him amounting to the sum of $1,414.63.
*266 Plaintiff insists that the judgment of the lower court should be amended by increasing the amount awarded from $8,000 to $15,000, while the defendant, on the other hand, contends that the amount awarded is excessive and should 'be substantially reduced.
The medical testimony reveals that the plaintiff, a woman of about forty years of age, received severe and painful injuries. She experienced prolonged and arduous treatment. On April 1st, 1949, the date of the accident, plaintiff visited the offices of Dr. Emmett Irwin. He was absent from the City, therefore, she was seen by Dr. Countiss, an associate, who prescribed for her and advised that she return home and remain in bed. She followed these instructions but returned the following Monday morning, April 4th, 1949, to visit Dr. Irwin. He testified that she consulted with him on that date. His examination disclosed bruises on her body consisting of black, blue and yellow splotches. She visited his office again on April 11th, 1949, at which time her legs were still black and blue and she was experiencing pain in the lower back, particularly on the right side, accompanied by headaches.
Plaintiff continued to suffer intense pain as a result of this accident and endeavoring to obtain a cure thereof or relief therefrom she consulted the following physicians. Dr. Guy Aycock of Franlclyn, Louisiana; Dr. Jack Wickstrom of New Orleans, Louisiana; Dr. H. P. Hewitt of Lafayette, Louisiana, who referred her to Dr. James L. Le-Noir, an orthopedist of New Orleans.
Dr. LeNoir first examined the plaintiff in January, 1950. He testified that from his examination he concluded that plaintiff was suffering from a herniated fifth lumbar in-tervertebral disc; she was placed in the Baptist Hospital on January 24, 1950. Conservative treatment was prescribed which included painful traction, but little improvement was noted in her condition. Dr. Le-Noir then called Dr. J. C. Colclough, a neuro surgeon in consultation. An opaque visualization of the fifth lumbar disc was made which reflected a herniation of this structure. On February 9th, 1950, a lami-nectomy was performed by Dr. Colclough with Dr. LeNoir assisting him.
Dr. Colclough testified that he discovered a herniated fifth lumbar disc “more on the right than on the left and comprising the first sacral nerve”, and that, as a natural result of the injury, plaintiff had undergone a great deal of pain and a cure from such an injury could require a period of three months to a year with possible permanent injury to the nerve root.
Plaintiff remained in the hospital until February 24th, 1950, a period of thirty days. She was conveyed by ambulance from the hospital to her home where she thereafter convalesced. She continued under the care of Dr. LeNoir and saw him, according to the doctor’s testimony, on March 16th, 1950, November 8th, 1950,- and February 27th, 1951. She was, therefore, under the care of innumerable physicians for a period of approximately one year and eleven months. Obviously she suffered intensely and had undergone a major operation after painful traction had failed to afford her relief.
On December 6th, 1949, eight months after the accident, plaintiff was examined by Dr. L. K. Loomis, an orthopedic surgeon, at the request of defendant. He testified that he “thought she could have sustained an injury to her back from the accident, but at the time that I saw her, there was no evidence of any injury”, even though he had X-rays taken of her back. He further stated that he did not see her after December 6th, 1949.
Finally, on March 2nd, 1951, defendant had plaintiff examined by Dr. G. D. B. Berkett, to ascertain if she had any residual disability whatsoever. He testified that plaintiff had had an operation for a disc injury prior to his examination which “revealed that she had good back mobility— in other words, she had on examining her, all of the segments of the lumbar spine move freely in all directions, there seem to be no muscle spasm, no loss — the sort of things you would find with a ruptured in-tervertebral disc had by this time disappeared as far as the mobility of the back was concerned.”
*267 We are of the opinion that the $8,000 awarded plaintiff by the court, a qua, is correct considering all of the circumstances and the present devaluation of the dollar and which sum we believe to be adequate only insofar as money can make it so.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.