GLADNEY, Judge.
Mr. and Mrs. William D. Thornton sue for damages arising from an automobile accident which occurred April 8, 1958, on U. S. Highway No. 165, between Urania and Olla in LaSalle parish. This cause was tried before a jury on November 24 and 25, 1958, and resulted in a judgment in favor of William D. Thornton for special damages of $1,424 and in favor of his wife in the amount of $15,000 for personal injuries. An appeal was lodged in this court and after its consideration our judgment rejected the demands of plaintiffs. Upon review by the Supreme Court, our decree was reversed, the liability of defendants established, and the case remanded to this court for the sole purpose of reviewing and determining the correctness of damages awarded plaintiffs by the jury in the District Court.
Mrs. Thornton testified that upon impact of the two vehicles involved in the collision on April 8th, she was “knocked out”, and that she could remember nothing of the surrounding circumstances other than hurting and that her mouth and throat were full of glass. She was admitted to the *581 Hardtner Memorial Hospital at Urania where she was under the treatment of Dr. R. L. Tannehill. After her discharge from the hospital on April 15th, she was confined at her home for some four or five days. She returned to see Dr. Tannehill on April 19th. Shortly thereafter she called upon Dr. McElwee at Winnfield, who informed her that she should see an orthopedist and referred her to Dr. T. W. Meriwether of Monroe. She went to see Dr. Meriwether for examination and treatment on May 3rd and 6th, and then again on November 11th, the latter visitation being solely for the purpose of evaluation at the request of the defendants. She was examined by Dr. A. Scott Hamilton, orthopedist, on May 23rd and he suggested hospitalization. She entered the St. Francis Hospital under his care, in Monroe, where she remained from May 25th through May 31st. She also saw Dr. Hamilton on June 11th and 26th. She testified that prior to trial she had been confined in the St. Francis Hospital four different times and during October she was hospitalized and treated in Winnfield by Dr. John T. Moseley. Dr. Moseley was not available as a witness at the trial. Mrs. Thornton testified that she was considerably bruised in the accident, that this condition lasted for some three or four weeks, that her tongue and mouth were cut by glass, and that she vomited blood for some four or five days following the accident. Her principal complaint, however, was as to her back, which she says has constantly caused her severe pain and has precluded her from doing any of her housework or farm chores, such as milking and feeding the cattle.
The medical testimony was divided as to whether Mrs. Thornton was suffering from a sprained back or an intervertebral disc injury. It is our appreciation of the evidence that Drs. A. Scott Hamilton, orthopedist, R. W. Dickenhorst, radiologist, and Oliver T. Mauterer, a physician and surgeon, testified Mrs. Thornton has a disc injury caused by the accident. Contrariwise, Drs. T. W. Meriwether and Alfons R. Altenberg, orthopedists, were of the opinion there was no disc injury and they disagreed with Dr. Dickenhorst’s interpretation of his X-rays. Drs. Mauterer, Ham.ilton and Dickenhorst all recommended surgery as a proper remedy for relieving the pain complained of by Mrs. Thornton. Dr. Hamilton testified the disc was “probably protruded”. However, it seems that surgery furnishes the only means of precisely determining the extent of the disc injury. Dr, Hamilton thought Mrs. Thornton would have severe pain for the remainder of her life unless she undertook surgery. Dr. Dickenhorst’s diagnosis was based on X-ray and fluoroscopic examination following the submission of Mrs. Thornton to a myelogram. Drs. Altenberg and Meriwether testified the myelogram indicated a narrowing of the disc and indentation which could reflect either a protruded disc or an arthritic spur. Neither of these entirely ruled out the presence of the disc protrusion or herniation. It was their opinion the pain was due to arthritis or a lumbosacral sprain. Dr. Tannehill testified he found no cause for Mrs. Thornton’s complaints of back pain. He also stated that a complete physical examination made during the period of hospitalization from April 8th to 15th revealed no bruises or lacerations, but that the patient suffered from shock until the morning of April 9th. His X-rays of the lower back and pelvis gave no indication of bony pathology.
The preponderance of the evidence supports the conclusion that the accident caused an intervertebral disc injury, the extent of which can only be determined through surgical process. It is further shown plaintiff suffered from such injury from the date of the accident and was in distress and pain as of the date of trial on November 24 and 25, 1958, approximately eight months following the accident. It is our understanding that the disc injury of Mrs. Thornton will continue to produce acute pain. Three *582 of the medical experts recommended an 'operation for the relief of the pain of which she complained. Mrs. Thornton’s complaints obviously were to some extent exaggerated as reflected in the testimony of several of the doctors. This fact, however, does not affect our finding that she sustained a severe back injury as a result of the accident.
Damages allowable for any disability must be measured, at least to some extent, by the age, condition and position in life of the individual so affected. Mrs. Thornton was fifty-six years of age and had a life expectancy of approximately seventeen years. The medical testimony indicates that unless she undergoes surgery she will suffer from considerable pain for an indefinite period, perhaps for the remainder of her life.
A number of awards for disc injuries have been made by the appellate courts of this state. It is, however, apparent that in none of the cited cases are the circumstances exactly similar to those in this case. At best those decisions furnish the court only with a guide to a proper allowance, which must be adjusted to the particular circumstances affecting the disability of Mrs. Thornton. The following decisions have some pertinence in connection with intervertebral disc injuries: In Chisholm v. Ryder, La.App. 2 Cir., 1952, 56 So.2d 316, a thirty-nine year old widow was awarded $7,120 by this court for injuries consisting of rupture of the fifth lumbar intervertebral disc and five to ten per cent permanent disability due to weakness of ankle, where plaintiff’s probable loss of earnings during her disability equalled $3,120. The Orleans Court of Appeal in Robichaux v. Toye Bros. Yellow Cab Company, Orleans App. 1952, 61 So.2d 264, awarded $8,000 to a forty year old woman who sustained a herniated fifth lumbar intervertebral disc injury which caused intense suffering and necessitated the care of a physician for treatment for one year and eleven months, and required her to undergo a major operation before a cure was affected. In Merchant v. Montgomery Ward and Company, 1 Cir., 1955, 83 So.2d 920, an award of $7,500 was granted to a fifty-three year old woman who sustained a compression fracture of the eighth thoracic vertebra and possible rupture of the fifth lumbar intervertebral disc which produced severe pain reaching from the lower back across her hip, necessitating sleeping on a hard board, and which required a major operation in order to improve her condition. In LeBourgeois v. Indiana Lumbermens Mutual Insurance Company, La.App. 1 Cir., 1958, 101 So.2d 720, it was held that a jury award of $13,000 was manifestly excessive and an award of $6,500 was approved for an eighty-four year old woman who suffered chest injuries, stiffness of her left hand, a lumbosacral sprain, and probably a deeper injury to the intervertebral disc system. In Marcantel v. Southern Farm Bureau Casualty Insurance Company, La.App. 1 Cir., 1958, 102 So.2d 879, the sum of $10,000 was awarded for past and future pain and suffering to a plaintiff whose life expectancy was twenty years. The court found plaintiff suffered constantly with his back as a result of a myelogram test of from twenty-four to forty-eight hours in length, and who sustained a back injury which was described as a possible disc injury or a back sprain. Additional items were allowed for medical expenses and loss of earnings. Sandra Kimball, a minor in the case of Kimball v. Audubon Insurance Company, La.App. 1 Cir., 1958, 103 So.2d 529, was awarded the sum of $2,500 for pain, suffering and disability for an injury to her back, either in the nature of a sprain or more likely, an intervertebral disc injury. In Lindsey v. Travelers Indemnity Company, La.App. 2 Cir., 1959, 111 So.2d 153, this court approved an award of $3,500 for personal injuries to an elderly man who had sustained a ruptured' disc with partial permanent disability. There was no answer to the appeal in that case *583 and consequently the court was not empowered to increase the award. This court also gave consideration to a disc injury in Turner v. Insurance Company of Pennsylvania, 2 Cir., 1960, 117 So.2d 657, wherein we approved an award of $10,300 made by the trial court to a farmer, who suffered a herniated intervertebral disc in the lum-bosacral joint requiring surgery, and who was unable to perform manual labor and who would continue to suffer pain to a considerable degree.
The most recent case to which our attention has been called as involving a disc injury, is that of Pickett v. Norwich Union Fire Insurance Society, Ltd., La.App. 1 Cir., 1960, 119 So.2d 566. There an award of $7,000 was made to plaintiff who sustained an injury or aggravation of a pre-existing cervical disc injury with marked limitation of flexion in the neck.
With due consideration of the awards made in the above referred to cases, it is our conclusion that the verdict of the jury pertaining to the pain and suffering, both past and future, of Mrs. Thornton, is excessive and should be reduced to $10,000.
An objection was made by appellants to Mr. Thornton’s claim for special damages insofar as it included an item of $12.50 in the bill of Dr. Hamilton. It was admitted by Dr. Hamilton this item represented reports to plaintiff’s attorneys for purposes of trial, and, therefore, it cannot be recovered. A further objection was made to the nursing bill of Huey Jones for $20 which Mrs. Thornton testified she paid on June 28th. It does not appear this bill is sufficiently proven and defendant should not be charged with this item. The remainder of the bill is not disputed. Accordingly, the judgment in favor of Mr. Thornton is amended by reducing the same to $1,391.50. As thus amended, the judgment of the trial court is affirmed in all other respects. Appellants are cast for all costs.