LOTTINGER, Judge.
On November 20, 1963, at approximately five o’clock p. m. Donna D. Durham was driving a Mercury automobile belonging to Hammond Egg Farm, Inc. in an easterly direction toward the city of Hammond, Louisiana, on a highway known as the Old Baton Rouge Highway. Miss Durham, the minor child of Dan R. Durham, Sr., lost control of the automobile which she was driving, went off the highway onto the south shoulder, jumped a ditch, hit a tree, came back across the ditch, and finally came to rest in the approximate center of the highway, partially in both lanes, with the front of her vehicle facing in a generally southwesterly direction. Miss Durham got out of and walked around to the front of the automobile because she noticed smoke coming from under the hood and thought that the vehicle might catch on fire. She *483 was almost immediately joined in the front of her automobile by a person who was almost involved in the accident when she went off the highway, then by two colored men. As they stood there inspecting the damage, an automobile traveling in a westerly direction operated by a Mr. Foster pulled up directly behind the Durham automobile, stopped, started to go around the left hand or south side of the Durham automobile, decided against it and stopped again. Thereupon Mr. Foster’s vehicle and the Durham vehicle were both passed by an automobile being operated by an unknown woman, who passed both vehicles on their right or north side and proceeded on in a westerly direction. Mr. Foster then pulled around the right or north side of the Durham vehicle and pulled up generally parallel with, and slightly ahead of the Durham vehicle to inquire whether or not anyone needed assistance. When told by one of the persons in front of the Durham vehicle that everything was alright, Mr. Foster started to drive on, but as he looked up, he saw a vehicle, which was that being operated by the plaintiff, Mr. Larocca, coming down the highway, traveling in an easterly direction, headed directly toward the group of people and the Durham vehicle. At this time, Mr. Foster yelled to everyone in front of the automobile to get out of the way, and he pulled his car up so as to be as far away from the impending collision as possible when it occurred. Mr. Larocca’s vehicle proceeded to hit two of the persons standing in front of the automobile, one of whom was killed and the other of whom was seriously injured. The other bystanders managed to jump clear before the impact. Mr. Larocca was himself injured in the accident and on June 9, 1964, filed the instant suit, naming as defendants Dan R. Durham, Sr., individually and as administrator of the estate of his minor daughter, Donna D. Durham, Hammond Egg Farm, Inc., the owner of the automobile being operated by Miss Durham, and Aetna Insurance Company, the liability insurer of the Mercury automobile.
After a trial on the merits, the Trial Judge rendered judgment in favor of all defendants, and against the plaintiff, rejecting the plaintiff’s demand at his costs. It is from this judgment that the plaintiff has appealed.
The Trial Judge did not favor us with either written or oral reasons for judgment and the appellant, on the basis of assumption, urges two specifications of error committed by the Trial Judge. The first is that the Trial Judge erred in finding that Donna D. Durham was free of negligence proximately causing the accident, and the second is that the Trial Court erred in finding that Peter Larocca was guilty of contributory negligence proximately causing the accident. In order for the Trial Judge to have found for the defendant, he must have decided that either Miss Durham was free from negligence of any character, or that if she was guilty of negligence that the plaintiff was guilty of contributory negligence.
Let us consider the appellant’s second specification of error, that with reference to the Trial Court’s alleged error in finding that the plaintiff was guilty of contributory negligence. The record indicates that the highway in question was asphalt, that it was wet at the time of the accident, that it had been raining prior to the accident, and although it was not actually raining at the time of the accident, that it was misting to a sufficient amount to require the use of windshield wipers, and further that at the time of the accident it was dark.
Miss Durham testified that she had been traveling down the highway in an easterly direction toward Hammond, had run off the highway, hit a tree, and come back onto the highway facing in a generally southwesterly direction with her car generally diagonally across the center line of the highway. The position of the automobile on the highway was verified by the State Trooper who investigated the accident. Miss Durham got out of the automobile, as aforesaid, walked around to the front to investigate smoke *484 coming from under the hood and was shortly joined by two colored men and another man who she said had almost been involved in the accident when she ran off the highway. She testified that at first she did not see the plaintiff’s vehicle approaching, but that she had heard someone yell, telling her to get out of the way, and then she said she heard a horn blow and when she looked back as she was jumping to the side of the road, she then saw the plaintiff’s vehicle approaching. Miss Durham also testified that in the interval between getting out of her automobile and the collision of the plaintiff’s automobile with her automobile, she noticed that at least one of the headlights of her car was burning, because she recalled that it was necessary for her to squint because of the light in her face.
The State Trooper who investigated the accident arrived at the scene approximately 45 minutes after the accident occurred and made an investigation of the physical evidence at the scene. He found no skid marks, which he seemed to attribute to the fact that the road was wet, and commented that based upon an examination of the brakes on the plaintiff’s vehicle which he made at the scene of the accident, he found those brakes to be inadequate. He testified that the brakes required three or four pumps on the pedal to get even a slight pressure on the brake pedal. He estimated the speed of the plaintiff’s automobile prior to the accident at 40 miles per hour, based upon the distance that the vehicle traveled from the point of impact and the amount of damage, and he further stated that he considered this speed excessive in view of the weather and road conditions.
Mr. Alexander testified on behalf of plaintiff and stated that his house was about 90 feet from the scene of the accident. He said that at the time that Miss Durham ran off the highway, he heard the noise, jumped up, ran out of his house, started down the driveway, turned and went back into the house put on his shoes, and ran back outside. Just as he was emerging from the house, the plaintiff’s vehicle hit the Mercury automobile. Mr. Alexander actually saw the second collision from his porch, which was about 60 feet from the accident. He saw the plaintiff’s automobile coming down the highway with the headlights shining against the people who were in front of the Mercury. Because of the angle of the Durham vehicle, he was unable to tell whether or not there were any lights on. He estimated the speed of the plaintiff’s vehicle at 45 miles per hour, based upon the observation of the vehicle as it approached the Durham vehicle.
Mr. Foster testified that he was traveling in a westerly direction on the highway with his lights dimmed at a speed between 25 and 35 miles per hour. He noticed something in the road ahead, flipped his lights onto bright and saw the rear of the Durham vehicle partially across the highway. He stated that he did not see any taillights burning on the Durham vehicle. Mr. Foster came alongside the north side of the Durham vehicle after having previously been passed by another unidentified automobile traveling in a westerly direction. He stopped at a point slightly ahead of the Durham vehicle and inquired of the people standing in front thereof as to whether or not they required any assistance. After having been told that none was required, he started forward, saw the plaintiff’s vehicle approaching, yelled to the persons in front of the Durham automobile to get out of the way, and then pulled his car up somewhat further to try to avoid being involved in the collision which apparently was going to take place. He testified that the plaintiff’s vehicle, when he first saw it, was a car length to a car length and a half away from the Durham vehicle. Mr. Foster was unable to state whether or not any headlights whatsoever were burning on the Durham vehicle. Both of the headlights on Mr. Foster’s vehicle were burning throughout the time that he was at the scene of the accident, up to and including the time of the collision of the plaintiff’s vehicle with the Durham automobile.
*485 The plaintiff testified in his own behalf and testified that he was driving down the highway at a speed of thirty or thirty-five miles an hour, that he had just taken his foot off of the accelerator when he suddenly saw the Durham vehicle and people in front of it on the highway. He immediately applied his brakes, but was unable to stop and skidded into the people and the Durham vehicle. He also testified that a light mist was present, that he had his windshield wipers and headlights on. The plaintiff also mentioned that when he saw the people in front of the Durham automobile, he blew the horn at the same time that he applied his brakes. His testimony is that he remembers nothing after that until he spoke with his wife in the hospital. We note with interest that his testimony under direct examination is to the effect that the thing that first made him aware that there were people on the highway was the fact that they came within his lights. The plaintiff was unable to give any estimate whatsoever as to the length of time which elapsed between his first having seen the people in front of the Durham automobile and the actual collision. The plaintiff likewise testified that prior to the collision he saw no lights of any kind, either in his own lane of traffic or in the left hand lane of traffic. Under cross-examination he testified as follows:
“A. Well, then I had my bright lights on and I couldn’t see so good, so I put on the dim, then as I was down the road I seen the mist or fog, so I started to put my foot off the accelerator, which I repeat again, and I seen these people in the road and I threw my brakes on, and I blew the horn and my car just skidded right on into them, that is all I can tell.
Q. And you never saw any other lights in the vicinity?
A. No sir. If I did, I would have had some kind of warning or something.”
Under direct examination the plaintiff testified as follows:
“Q. At any time before your headlight actually hit the people, did you have any indication that the highway was blocked?
A. No sir.
Q. Were there any lights there that you remember seeing?
A. I didn’t see no lights on my side of the road at all.
Q. Did you see some lights on the other side of the road?
A. No sir, as I said it was kind of misty.”
A second Mr. Alexander whose house is approximately 100 yards from the scene of the accident, testified on behalf of defendant and said that when he heard the noise caused by Miss Durham’s having gone off of the highway, he got up, went out of his house and was standing there watching the Durham vehicle with the people standing in front of it. He testified positively that the taillights on the Durham automobile were burning. He stated that it was approximately two or three minutes later that the plaintiffs vehicle struck the Durham automobile. He stated that he saw the plaintiff’s automobile coming down the highway approaching the Durham automobile and that from his experience as a driver of an automobile he estimated the speed of the plaintiff’s vehicle at 50 or 60 miles an hour.
Carrie Torrence, the widow of the person killed by the plaintiff’s vehicle, testified that she was traveling in a truck with her husband and another man in a westerly direction when they saw the Durham vehicle stopped, in the highway. The truck in .which she was riding was then pulled onto the north or right hand shoulder completely off of the highway and they left the lights of the truck on, pointing down in a westerly direction, the direction from which the *486 plaintiffs automobile later came. Her husband and the other man got out of the truck and trotted over to the front of the Durham automobile. She testified that shortly after her husband and the other man reached the front of the Durham vehicle, they were struck by the plaintiff’s vehicle. She did not hear any brakes being applied, nor did she hear any horn blowing.
There is conflicting testimony in the record as to whether or not one of the headlights on the Durham vehicle was burning at the time of the collision with the plaintiff’s vehicle. Miss Durham says that the right headlight was broken when she collided with the tree after having run off the highway, but that the remaining or left headlight was still burning at the time that the plaintiff’s vehicle struck. Mr. Foster did not recall whether this light was burning or not, the Mr. Alexander who testified in behalf of plaintiff did not know whether the headlight was burning or not, the Mr. Alexander who testified in behalf of defendant was located at a vantage point somewhat toward the rear of the Durham vehicle and could only say positively that the taillights on the Durham vehicle were burning. The plaintiff testified that there were no lights burning at all as he approached the Durham vehicle. It is, however, uncontradicted that there were at least two sets of headlights facing the plaintiff’s vehicle as he approached the Durham vehicle ; those of Mr. Foster’s automobile and those of the truck in which Mrs. Torrence was riding. By positive testimony the lights on both of these vehicles were burning prior to the collision of the plaintiff’s vehicle with the Durham vehicle.
It is apparent from the testimony that the plaintiff was proceeding down the highway under adverse weather conditions, and that from his own testimony he failed to see any lights whatsoever, when in fact two sets of headlights plus possibly one other headlight was facing him. The plaintiff himself said that had he seen any lights at all it would have acted as a warning to him. Fie saw the Durham vehicle and the people standing in front of it only when it came into the view of his own headlights, which, by his testimony, were set on dim. We find, as undoubtedly did the Trial Judge, that the plaintiff was guilty of contributory negligence in failing to see what he should have seen, and quite probably in overdriving the range of his headlights. Counsel for appellant argues that the normal duty imposed on a motorist to see what, through the exercise of ordinary prudence and attention, he could and should have seen is to be lessened or mitigated in this instance because of the adverse weather conditions. We dealt with the question previously in the case of Goutierrez v. Travelers Insurance Company, La.App., 107 So.2d 847, wherein we said:
“A motorist is required to keep his automobile under control at all times. His duty to do so increases in periods of low visibility and adverse road conditions. When visibility is impaired a motorist should reduce his speed and keep his automobile under proper control.”
We must also take into consideration the fact that two vehicles approaching the Durham car from the rear, one with no other vehicle being present, had no difficulty whatsoever in seeing the Durham vehicle in time to come to a safe stop. It was these same two vehicles which provided two sets of headlights which faced the plaintiff as he approached the Durham vehicle. We therefore find, as aforesaid, that the plaintiff failed to see that, which, by the use of ordinary care and prudence, he should have seen, and that he was thereby negligent, which negligence was a proximate cause of the accident.
Having determined that the plaintiff was negligent, the question of Miss Durham’s negligence, per se, becomes moot.
Accordingly, the judgment of the District Court is affirmed.
Judgment affirmed.