133 So.2d 920 (1961)
Osbon H. PEATS et al., Plaintiffs-Appellees,
v.
J. K. MARTIN et al., Defendants-Appellants.
No. 9560.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1961.
*921 Theus, Grisham, Davis, Leigh & Brown, Monroe, for defendants-appellants.
McKeithen, Mouser & McKinley, Columbia, for plaintiffs-appellees.
Before HARDY, AYRES and BOLIN, JJ.
*922 AYRES, Judge.
This is an action in tort arising out of an automobile and truck collision on U. S. Highway 167, at the intersection of the Thomas Mill Road about a mile-and-a-half north of Winnfield.
Involved in the collision were plaintiffs' Chevrolet automobile, driven and operated by plaintiff Lida M. Peats; a Ford pulpwood truck of defendant J. K. Martin, operated by his employee, Overton Nolley; and a White butane truck and trailer of Brewton Butane Company, Inc., operated by its employee, W. D. Richards. All three vehicles were proceeding south on U. S. Highway 167, the pulpwood truck in the lead, followed at some distance by plaintiffs' car, which, in turn, was followed by the butane truck.
The accident occurred after dark, about 5:50 p. m., December 10, 1957, when the pulpwood truck stopped or slowed to a virtual stop in preparation for making a right-angle turn to the left into the Thomas Mill Road. Plaintiffs' car struck the pulpwood truck from the rear, and its rear skidded around to the left where it was likewise struck by the butane truck.
Plaintiffs are Osbon H. Peats and his wife, Lida M. Peats. He seeks to recover damages in the nature of the loss or destruction of his car, loss of earnings of his wife, and hospital and medical expenses for the treatment of his wife's injuries. She seeks to recover damages for personal injuries in the nature of pain and suffering sustained by her.
Initially made defendants were Martin and Brewton Butane Company, Inc., and their insurers. A compromise settlement was subsequently entered into by plaintiffs with the latter and its insurer, with the express reservation of their rights to proceed against the former and his insurer.
Liability on the part of these defendants is predicated upon the stopping of a loaded pulpwood truck in the right traffic lane of a principal thoroughfare, at night, without a taillight, or other warning device, to protect traffic from the rear, and in attempting a left turn under the aforesaid circumstances when it was unsafe to do so.
Defendants concede the pulpwood truck was being operated without a taillight or other warning device; and, therefore, as to the question of liability, the defense is relegated to its charges of contributory negligence against the driver, Lida Peats. These charges are that she failed to keep her car under control, and continued her movement forward while blinded by the headlights of both oncoming and approaching vehicles. Secondly, defendants contend there were two separate and distinct accidents, the second of which was allegedly caused solely by the negligence on the part of the driver of the butane truck. In consequence of this, defendants would point out that a major portion of the damage and injury was caused by the second accident, and that plaintiffs have failed to prove the specific damages occasioned from and suffered in the first accident.
These issues were resolved in plaintiffs' favor and, in the judgment rendered, credits were allowed for the amount received by plaintiffs in the settlement with the other defendants. After the application of these credits, there was judgment in favor of the husband for $4,552.33 and, in favor of the wife, for $2,500. From the aforesaid judgment, defendants appealed. Lida Peats has answered the appeal praying that the award in her favor be increased to a net of $7,000.
In addition to defendants' concession of negligence on the part of their driver, in driving a motor vehicle without a taillight or other adequate warning device, negligence is shown in his stopping of the truck on a main-traveled thoroughfare with the intent to make a left turn *923 without first ascertaining that the movement could be made in safety. LSA-R.S. 32:236, subd. A.
The facts and circumstances in this particular instance emphasize the necessity and importance of the strict compliance with the provisions of the aforesaid statute. Darkness had just set in when an adjustment from daytime to nighttime caused great difficulty in seeing objects on the highway. The character and appearance of the truck and its load adversely affected its visibility, particularly in the darkness of the night. The truck was of a standard design for the hauling of pulpwood, the cab of which was blue in color. The rear framework was about three and a half feet wide and approximately the same height from the ground. The load consisted of pine pulpwood of approximately five feet in length, laid crosswise of the truck, with only the dark brown bark of the logs exposed to view from the rear. The load, from its width and height, of approximately eight to ten feet, completely obscured the cab from one's view when approaching from the rear.
The lights of the Peats car on the low beam, because of an approaching vehicle, tended to shine upon the roadway underneath the load and framework of the truck. The pulpwood offered no reflecting surface whatsoever. The metal cab of the truck, glass windshield, and rearview window were all obscured by the load of pulpwood. The load likewise obscured plaintiff's view from any light of the truck's headlights shining on the concrete pavement ahead.
Moreover, the testimony establishes that Lida Peats was a prudent driver and was exercising reasonable precaution both preceding and at the time of the accident. This is established not only by her testimony but by that of Richards, the driver of the butane truck. As plaintiff approached an intersecting highway, she stopped. As she met oncoming vehicles, she dimmed her lights and reduced her speed, which action caused Richards to likewise reduce his own speed. Such was the procedure beginning with the approach to the intersection of the Calvin road. After passing this intersection, plaintiff and Richards met three vehicles. Simultaneously with the passing of the last of these cars, plaintiff suddenly discovered the pulpwood truck stopped in front of her car; whereupon she applied her brakes but was unable to avoid a collision. Neither was Richards able to avoid the collision. As aforesaid, after plaintiffs' car struck the pulpwood truck, its rear end skidded to its left and was struck by the following butane truck.
On considering the aforesaid facts and circumstances, the trial court concluded that defendant's driver was guilty of gross negligence in driving a loaded pulpwood truck upon a main-traveled thoroughfare at night without rear lights or other appropriate warning device, and in stopping thereon to make a left turn without ascertaining that the movement could be made in safety. This conclusion is, in our opinion, amply supported by the proof contained in the record.
Nevertheless, as heretofore pointed out, the defendants contend plaintiff was guilty of contributory negligence barring her recovery. This defense is predicated on the contention that the evidence establishes Lida Peats was blinded continuously for several hundred yards, and until she was within a distance of approximately 50 feet from the point of impact of the collision. We do not so construe the evidence. As heretofore stated, as plaintiff met a car, she dimmed her lights and reduced her speed. For one of only ordinary capabilities, to drive while completely and continually blinded for several hundred yards down a highway and keep his vehicle in its proper lane of travel would be approaching the miraculous. This is obviously incorrect. Considering her testimony and that of Richards, it cannot be said that, in a literal sense of the word, plaintiff was continuously blinded. For *924 brief periods of time, and momentarily as she met and passed oncoming cars, her vision was, of course, obscured. This was only intermittently and for the meeting and passing of only three cars in the several hundred yards.
The evidence clearly preponderates to support plaintiffs' contention that the pulpwood truck, without lights or other signals, was not observable until too late for plaintiff to avoid the accident. The speed of plaintiff driver was reasonable and moderate. There was nothing whatever to cause her to anticipate any hazard on the open road in the vicinity of this truck, such as a truck unlighted and stopped in her lane of travel. When she first saw the truck, she immediately applied her brakes in an effort to avoid the accident.
The rule that a motorist traveling on the public highways after dark or during abnormal atmospheric conditions, such as a rainstorm or a fog which prevents him from seeing ahead, except imperfectly and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted constitutes an exception to the general rule that a motorist may assume the road is safe for travel, even at night; but this exception to the general rule is likewise subject to an exception to the effect that a motorist traveling by night is not charged with the duty of guarding against striking unexpected or unusual obstructions which he had no reason to anticipate would be encountered on the highway. Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1; Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A. 1917F, 253.
The case of Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, involved a truck parked on the dirt shoulder of a paved highway, with one of its front wheels resting on the shoulder and the other front wheel and both rear wheels, on the pavement. The body of the truck extended at an angle across the right-hand lane about five feet from its outer edge, with no lights or flares to warn motorists of its presence. The plaintiff was proceeding in this partially blocked traffic lane when the truck suddenly loomed out of the darkness. Because of traffic approaching from the opposite direction, plaintiff had no alternative but to apply his brakes. Being then too close to avoid striking the rear end of the parked truck, it was nevertheless held that plaintiff was not negligent. It was there pointed out that a motorist, on meeting approaching cars, was under the duty of dimming his lights and that, when the plaintiff there dimmed his lights, the beam was necessarily thrown down on the highway causing it to shine under the rear end of the truck which was protruding some distance into the highway. Accordingly, it was held that plaintiff was not negligent in failing to see the truck sooner than he did.
From the facts of the cited case, it appears plaintiff was driving at a moderate rate of speed, between 40 and 45 m. p. h., on an open highway with his car properly lighted, and that, on meeting approaching cars, he reduced his speed to 25 m. p. h. There was nothing to indicate that the neighborhood within the vicinity was thickly populated. Nor were there any facts by which plaintiff would have expected cars to be parked on the highway.
Similar situations were presented in Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909; Carter v. Le Blanc Lumber Co., La.App. 1st Cir., 1948, 37 So.2d 471. The first of these involved the blocking of a highway by a lumber truck, and the second by a log truck. Under such similar circumstances, it was held that the sole, proximate causes of the accidents were the gross negligence of the defendants in allowing their trucks to be driven, or stopped, on main thoroughfares at night and without rear lights or other warning devices.
*925 It was likewise held, in Lynch v. Fisher, La.App. 2d Cir., 1949, 41 So.2d 692, 694, that, where a logging truck was stopped or parked at an angle on the right side of the highway at night, without taillights or flares and a motorist had dimmed his lights on noting the approach of an automobile from the opposite direction, the motorist who was driving at a reasonable rate of speed but who did not see the parked truck until only within a few feet of it was not contributorily negligent.
In the instant case, under the aforegoing facts and circumstances, we do not believe plaintiff was negligent in failing to see the truck sooner than she did, and that, consequently, she is not amenable to the charge of contributory negligence.
We are not impressed with the ingenious contention and argument of defendants that there were two accidents and, in order for plaintiffs to recover against them, they must establish the definite injuries sustained when plaintiffs' car struck defendant's truck, separate and apart from the injuries which may have been caused by the subsequent collision between the following butane truck's crashing into plaintiffs' car.
In explanation, it may be pointed out that it has not been established, and, moreover, cannot be established, in the instant case, in the absence of Brewton Butane Company, Inc., as a party litigant, that its truck driver was anywise negligent or that his negligence, if any, constituted a proximate cause of the accident. Therefore, whether or not the driver of the butane truck was negligent is of no consequence.
However, if it should be concluded that Brewton's employee's negligence constituted an efficient, intervening cause of the accident, in order for these defendants to be relieved of the consequences of their employee's negligence, such intervening cause would have had to supersede the original negligence and must have alone produced the injury. Lynch v. Fisher, La.App. 2d Cir., 1947, 34 So.2d 513. The rule invoked is without application to the facts of the instant case.
Nevertheless, if the negligence of two tort-feasors combine to produce an injury, both are responsible for all damages sustained and their liability is in solido. LSA-C.C. Art. 2103; LSA-C.C. Art. 2324; Quatray v. Wicker, 178 La. 289, 151 So. 208.
Nor are we impressed with the argument that, inasmuch as plaintiffs have compromised and settled their claims against one set of defendants, plaintiffs' recovery against the other defendants should be reduced by 50% of whatever sum they may be awarded. Such a contention, if sustained, would, in effect, reduce the liability of joint tort-feasors from solidary to joint obligations. The defendants remaining after a compromise with others, with a reservation of rights against them, are entitled, at the most, only to a credit of the amount received against any award which may be made. The defendants were credited with such amount.
Finally, for consideration, is the matter of quantum.
Defendants first complain of the award for loss of wages of plaintiff, Lida Peats. The consensus of the medical testimony is that plaintiff was disabled for a period of 18 months and had reached maximum recovery. That was the specific estimation of Dr. Roy V. Martin. Dr. I. C. Turnley estimated the period of disability from nine to twelve months, dating from June 27, 1958. Dr. T. E. Banks, Jr., an orthopedist of Alexandria, who examined plaintiff in July, 1958, testified she was unable to work at that time. The next occasion on which he saw plaintiff was April, 1959. On that occasion, plaintiff's back was insufficiently strong for her to do lifting. This condition, the doctor thought, would clear up, under proper treatment, in a period of 90 days from that date.
As to her weekly wage as a practical nurse, the testimony amply supports the *926 trial court's findings of $30 per week. We find no manifest error in the judgment in this respect. No specification of error has been pointed out and our independent research discloses none.
Both plaintiffs and defendants complain of the award made to Lida Peats for the personal injuries sustained by her. Immediately following the accident, plaintiff Lida Peats was carried to the Martin Clinic in Winnfield, where she was seen, examined, and administered treatment by Dr. Turnley, who continued to treat her for a period of more than six months. Dr. Turnley found that plaintiff's injury was primarily in her back, accompanied by extreme pain, for which he immediately gave her first aid. A physical and x-ray examination disclosed that plaintiff had sustained a crushed vertebra with fractured lamina in the area of the ninth thoracic vertebra. This was described as an intervertebral compression fracture of this vertebra, reducing its length by 40%. The lamina, or projection on the posterior side of the vertebra itself, extends and encloses the spinal cord for which it forms a canal. Her pain was described as extremely severe.
After the seriousness of plaintiff's injury was determined, Dr. Turnley referred her to Dr. Banks. On this referral, she was hospitalized in Alexandria from December 10 to December 14, 1957, when she was returned to the Martin Clinic in Winnfield where she remained a patient until January 10, 1958. Dr. Banks' diagnosis and findings corroborated the findings of Dr. Turnley. During the latter part of April, 1958, from an examination made on that date, Dr. Banks testified that plaintiff's progress had been quite satisfactory. He advised that the brace she had been wearing be removed and that she be fitted with a corset in order that appropriate exercises might be undertaken in an effort to strengthen her back. On a subsequent examination of July 2, 1958, Dr. Banks found plaintiff complaining of discomfort in her back, localized at the fracture site. At the time, she was still wearing the brace, and he again advised that it be discarded because of plaintiff's having placed too much dependence upon it.
Plaintiff was shown to be 54 years of age.
From a clinical standpoint, the doctor was of the opinion plaintiff had recovered, but that, radiologically, she had a consistent collapse of the vertebra and a permanent deformity which, however, had no effect on her appearance.
Dr. Martin assumed the treatment of plaintiff after July 1, 1958, when Dr. Turnley established practice in Jena. Plaintiff was hospitalized by Dr. Martin from July 24 until August 3, 1958, for conditions which were only indirectly related to the accident. The brace with which she was fitted by Dr. Banks was worn until September, 1958, and was then replaced with a special type of corset as prescribed by Dr. Banks.
At the time of trial, in May, 1959, plaintiff was still complaining of pain in her lower back.
In support of an increase in the award, plaintiff cites the cases of Merchant v. Montgomery Ward & Company, La.App. 1st Cir., 1955, 83 So.2d 920; Thornton v. F. Strauss & Son, Inc., La.App. 2d Cir., 1961, 129 So.2d 580. In the former case, plaintiff, a 53-year-old woman, was awarded $7,500. She sustained a compression fracture of the eighth thoracic vertebra and a possible rupture of the fifth lumbar intervertebral disc, as the result of which she suffered severe pain reaching across her lower back to her hip, and, for the alleviation of this condition, an operation of a major nature had been recommended.
In the latter case, a 56-year-old woman was awarded $10,000 for an acutely painful intervertebral disc injury, the extent of *927 which could only be determined through surgery.
After reviewing these and awards in many other cases, we have concluded that an award of $6,000 for the injuries sustained by plaintiff is neither excessive nor inadequate; and that, accordingly, the award should be increased to that sum subject to a credit of $1,000 received and apportioned as a credit on her claim.
The judgment appealed is accordingly amended so as to increase the net award in favor of plaintiff, Lida M. Peats, to $5,000, and, as amended, it is affirmed at defendants-appellants' cost.
Amended and affirmed.