JOHNSON, Judge.
Plaintiff appeals from a judgment of the District Court dismissing his suit for damages sustained in a highway collision near Belle Chasse, Louisiana.
There is not much dispute over the basic facts of this case. The controversy arises as to the ability of plaintiff to have prevented his automobile from colliding with defendant’s large truck, which its driver had backed from a private driveway completely and squarely across plaintiff’s lane of travel up-river at Belle Chasse. Plaintiff suffered severe personal injuries as a result of the accident. The present defendants *702 are the owner of the truck and the owner’s public liability insurance carrier. The driver ox the truck, Joe Clay, the owner’s employee, died of natural causes before the trial of the case in the District Court.
The truck had been driven from New Orleans down-river to deliver a television set to a private home beside the road in the outskirts of the town of Belle Chasse. The driver headed the truck into the customer’s driveway, unloaded the television set, backed the truck into the highway and stopped it at right angle to the highway. There is some dispute about how far the rear of the truck projected into the road, but we are convinced from the evidence that when the truck stopped it was entirely across the upriver traffic lane with the rear end extending two or three feet into the down-river lane. Plaintiff’s automobile was approaching from the south, traveling toward New Orleans. Another car, driven by A. L. Hebert, was approaching the truck from New Orleans going down-river. Both cars were several hundred feet from the truck when it stopped in the road. Neither driver saw the truck at that time. The plaintiff charges proximate negligence against the truck driver. The defendants denied the charge and have set up an alternative plea of contributory negligence on the part of the plaintiff.
In this situation it is proper first to determine whether plaintiff was guilty of negligence which contributed to or was the proximate cause of the accident. The plaintiff had driven down-river from New Orleans to Port Sulphur and Buras to collect some money and was on the return trip, passing through the town of Belle Chasse, at about 7:45 p. m., o’clock, on March 18, 1957. The night was dark and the weather gloomy. Considerable rain had been falling during the day but had let up at that time. As one leaves Belle Chasse on his way toward New Orleans there is a wide curve after which the road is straight. The road is paved with two lanes for traffic — one lane in each direction. Plaintiff testified that he was driving in his right lane at about thirty-five miles per hour in a twenty-five mile per hour speed limit zone in the town. When he completed the curve with the road straight ahead he observed another car with bright lights coming toward him. Plaintiff had his bright headlights on and put his dimmers on to call upon the driver of the approaching car to do the same. Plaintiff’s testimony is contradictory as to whether the other car obeyed plaintiff’s call for dimmer lights. On the trial of the case he said the other car continued toward him with bright lights and never dimmed them. When he was reminded of what he said in a discovery deposition prior to the trial, he admitted that the other car did dim his lights before the two cars met. However, he stated that he did not slow down his speed and that the bright lights were not “interfering with my driving too much. * * * Well, it didn’t allow too close a vision, you might say, but it didn’t interfere with, I mean, common judgment in traveling.” Plaintiff met the other car before he struck the truck. He never did say how far he was from the truck when the other car passed him but he said that he was about twenty-five feet from the truck when he first saw it. (Plaintiff’s attention apparently was fixed on the car he was meeting rather than on the road ahead of him). He says he saw the other car cut to its right, putting the right wheels of that car off the road, when it ran into a big puddle. (Actually the other car was dodging around the back end of the truck at that time). When plaintiff saw the truck he did not apply his brakes but swerved to his left and struck the right rear corner of the truck.
A. L. Hebert was driving the car that met plaintiff just before the accident. He had a passenger, M. O. Ott, in his car. Both of them testified and their testimony is substantially the same. Hebert said he saw the truck when he was about seventy-five to one hundred feet from it. He was traveling with his dimmers on all the time, because he said he could see the road better immediately in front of the car with the dimmers on. Hebert saw the other car *703 coming up the road and when he saw the truck, without lights it looked like a big black wall entirely across the up-river lane and extending several feet into his right lane going down-river. He was traveling about thirty-five miles an hour. He cut to his right and passed the back end of the truck with his right wheels off the pavement. He traveled about one hundred feet before the two cars met, but he said it could have been less than one hundred feet. He did not see the collision but heard it and saw in his rear mirror what happened.
Roy Buck, the truck driver’s helper, was seated in the truck to the right of the driver. He thinks the only part of the truck that extended into the edge of the road when the track stopped was the tailgate. He said the truck lights, front, rear clearance lights on the side and lights on top of the cab were burning. He was looking down the road and Clay, the truck driver, was looking up the road. He saw plaintiff’s car coming out of the curve about one hundred yards away, or about a city block. He told Clay that the car was coming and not to back up any more and he kept watching plaintiff’s car all the time. He said plaintiff was speeding but he did not think the car was going to hit the truck until it happened.
The truck had delivered the television set to the home of R. J. Granier. The home sat about one hundred twenty-five feet from the highway. The truck was in his driveway and after the delivery he was outside when the truck started backing down the driveway toward the road. He then turned to walk into his home. He heard squealing of brakes and as he turned he saw plaintiff’s car hit the truck. The car continued to its left toward the ditch about seventy-five feet before it stopped. He said the front lights of the truck and the lights on top of the cab were burning but he couldn’t say about the tail lights. There was a street light right across the road, from his home, which he said was also burning. He walked down his driveway to the road and when he arrived at the road the back end of the truck was about three or four feet in the road. He said the curve referred to by the witnesses was about a block and a half from his driveway.
Plaintiff attributed his failure to see the truck sooner to the darkness of the night, the dark color of the wet canvas forming the top of the large truck, and the absence of all lights on the truck. We believe the headlights of the truck and the lights on top of the cab were burning, but form no opinion about the tail lights. From the position of the truck across the highway, the lights would be of very little, if any, protection in the direction from which plaintiff and Hebert approached the truck. We are also convinced that the truck was entirely across plaintiff’s lane with the rear end extending two or three feet into Hebert’s lane. Hebert saw the truck when he was seventy-five to one hundred feet from it, and we see no reason why plaintiff could not have seen it as well as Hebert. There is some dispute about plaintiff’s speed. He was at least exceeding the speed limit posted at twenty-five miles per hour. ' In any kind of weather, good or bad, and particularly on a dark, gloomy night, the driver of an automobile should govern his speed not to exceed the legal rate and certainly the speed should be controlled so that his car could be stopped within the range of his vision. The truck was large and dark in color. We can draw on experience and common sense to say that the headlights of an automobile against black darkness as a background would not easily reflect from such a dark object. But with the lights of Hebert’s oncoming car as a background, the truck should have been readily detected by plaintiff in plenty of time to stop his car if he had been going no more than twenty-five miles an hour and keeping a sharp lookout ahead, instead of looking to his left, away from his lane of travel, to watch the oncoming car when it swerved its right wheels off the road and ran through the puddle. Plaintiff’s inattention ahead of him brought him closer to the truck while his eyes were diverted and when he did look ahead again he saw the truck right in front of him and *704 was unable to avoid hitting it. Hebert saw the truck which looked to him like a big, black wall when his car was seventy-five to one hundred feet from the truck and only two or three feet of it was in Hebert’s lane. There can be no valid reason why plaintiff could not have seen the whole truck in his lane if he had been keeping a proper lookout ahead. A large truck, black or white, is not an unusual object, and if a driver traveling at a lawful speed cannot see the side of a two-ton truck with a canvas top, wet or dry, he should not be driving at all. This case does not come within the exceptions that excuse a driver from seeing an unusual object partially in his path under the circumstances of those exceptions. Even those exceptions do not relieve a driver of the duty to keep looking ahead. Plaintiff’s own negligence on that occasion was a contributing proximate cause of the accident and bars a recovery.
The judgment appealed from is affirmed.
Affirmed.