189 So.2d 12 (1966)
Howard L. SHIVELY et ux., Plaintiff-Appellants,
v.
Gerald W. HARE et al., Defendant-Appellee.
No. 6699.
Court of Appeal of Louisiana, First Circuit.
June 13, 1966.
Rehearing Denied July 8, 1966.
Arthur W. Macy, of Reid & Macy, Hammond, for appellants.
Iddo Pittman, of Pittman & Matheny, Hammond, for appellee.
*13 Before ELLIS, LOTTINGER, LANDRY and BAILES, JJ.[*]
BAILES, Judge.
This is a tort action brought by plaintiff-appellants to recover damages, both special and general, for the wrongful death of their son, William O. Shively, who was killed in a vehicular collision in the early evening of April 14, 1961. The sole defendant before us herein is State Farm Mutual Automobile Insurance Company.
Although Gerald W. Hare was named a defendant in plaintiffs' petition no legal service of citation was had on him. The lower court dismissed the suit as against him on an exception. No appeal was taken from the ruling of the lower court and it is now final. Also John D. Dickson, driver of the pulpwood truck into the rear of which Gerald W. Hare drove his automobile, was made a defendant in plaintiffs' petition. He was duly cited to appear and answer, however, no appearance was made by him. No adjudication was made by the lower court as to his liability, consequently John D. Dickson is not before us in this appeal.
After trial on the merits, the lower court rendered judgment in favor of defendant dismissing plaintiffs' demands as to it. From this judgment plaintiffs appeal.
Plaintiffs allege their son, who at the time of his untimely death was 19 years of age and a member of the armed forces, was a guest passenger in a 1960 Chevrolet automobile owned and driven by Gerald W. Hare, when the latter negligently drove into the rear of an empty pulpwood truck on U. S. Highway No. 51 in Tangipahoa Parish, less than a mile south of the state boundary line between Louisiana and Mississippi.
The facts, as shown by the evidence, are almost entirely free of dispute. The high way runs north and south and at the place of the collision is straight but hilly for some distance in either direction. The accident occurred between two hills just as the highway commences an incline for traffic going north. The decline and incline of the highway in this hilly section are gradual. It was established beyond dispute, although John D. Dickson contends to the contrary in his testimony, that the pulpwood truck had no lights whatsoever burning. It was of a dark color and was equipped with a steel frame for hauling pulpwood. The evidence is equally clear that U. S. Highway 51 is a heavily traveled federal highway serving as a main traffic artery for northsouth traffic in this section of the state. Witnesses who testified to the occurrence of the accident stated that a southbound vehicle passed the pulpwood truck just immediately prior to the collision. After impact, the pulpwood truck came to rest in the ditch some 80 feet north of the point of impact, and the Hare vehicle stopped in its lane of travel near the point of collision. The plaintiffs' son was killed instantly and Mr. Hare received severe scalp wounds, and was unconscious for a short period of time.
It was shown the pulpwood truck was proceeding at a speed estimated at from five to fifteen miles per hour, at any rate very slowly, and the estimated speed of Mr. Hare's vehicle was from 50 to 60 mph.
On this appeal, plaintiffs contend the trial court erred in not holding Mr. Hare guilty of negligence that was the proximate cause of the accident in operating his vehicle on a public highway of this state without maintaining a proper control of his vehicle and driving at such speed as to be unable to stop within the range of vision afforded by his headlights.
Plaintiffs argue in their brief, "The negligence of Gerald W. Hare and the consequent liability of his insurer is based upon the rule which has been recognized by the *14 courts of this state for at least 35 to 40 years to the effect that it is the duty of the driver of any motor vehicle operating on the public highways of this state to drive at such speed and to maintain such a lookout and control of his vehicle so as to be able to stop within the range of vision afforded by his headlights. While our courts have in recent years made some exceptions to that general rule based upon the evidence of an unexpected or unusual set of circumstances not under the control of the driver of the following vehicle, we shall show here that the facts in this case do not justify the application of any exception to that general rule."
Plaintiffs then argue the application of the cases of Borne v. Clay, La.App., 144 So. 2d 701; Ramsey v. Langston, La.App., 140 So.2d 775; D. & D. Planting Co. v. Employers Casualty Company, 240 La. 684, 124 So.2d 908; Noland v. Liberty Mutual Insurance Company et al., 232 La. 569, 94 So. 2d 671; Sedotal v. Fidelity & Casualty Company of N. Y., La.App., 77 So.2d 153; McDowell v. National Surety Corporation, La.App., 68 So.2d 189; Dauzat v. Kelone, La.App., 65 So.2d 924; Finley v. Guidroz et al., La.App., 58 So.2d 271, in support of their contention they should recover under the theory advanced herein that Gerald W. Hare was driving at such speed as to be unable to stop within the distance illuminated by his headlights.
Before proceeding to a discussion of the cases cited by plaintiffs and their applicability to the case before us, the comment of our Supreme Court in the case of Gaiennie v. Cooperative Produce Co. (1940) 196 La. 417, 199 So. 377, 379, should be kept in mind, wherein it said in discussing a case similar to the instant one:
"[2, 3] In the case of Woodley & Collins v. Schusters' Wholesale Produce Co., Inc., 170 La. 527, 128 So. 469, in discussing whether or not the driver of an automobile should be deemed negligent for failure to slow down, we stated that it depended on the circumstances of the particular case, and that it is not easy, nor safe, to lay down a hard and fast rule on the subject. The difficulty in laying down a hard and fast rule is that the act provides that the conditions and circumstances must be considered as well as the traffic, surface and width of the highway, and the location of the neighborhood. Such being the case, the particular facts of each case must be considered in arriving at a conclusion, and it would not be safe to lay down a hard and fast rule for that reason."
Also see the comment of the court along this line in the cases of Louisiana Power & Light Co. v. Saia et al., La.App., 173 So. 537, and Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253, and Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.
The case of Borne v. Clay, supra, is easily distinguishable for the reason therein the accident occurred within a 25 mph speed zone, the truck had lights and the night was dark and gloomy. The court therein found excessive speed, and held the lights of an oncoming car should have made the large truck in the road more visible and easily detected. We find the facts therein easily distinguishable from instant case.
In Ramsey v. Langston, supra, the court found the weather conditions such that the driver of the vehicle which struck the parked vehicle should have reduced his speed and was negligent in not seeing the parked vehicle.
In D. & D. Planting Co. v. Employers Casualty Company, supra, the Supreme Court did not have before it the same type case as is before us herein. The court found the plaintiff was guilty of such negligence as to bar recovery from the insurer of the vehicle which struck plaintiff's unlighted tank.
The facts in the case of Noland v. Liberty Mutual Insurance Company, supra, are too different to be controlling or persuasive in the instant case.
*15 In McDowell v. National Surety Corporation, supra, the driver, Mrs. McDowell, was adjudged guilty of negligence in driving at an excessive rate of speed in foggy weather. Thus the facts of this case are not applicable to and thereby distinguish it from the instant case.
The facts as found by the court in Sedotal v. Fidelity & Casualty Company of N. Y., supra, distinguish it from the instant case. Actually, in that case the court found the driver of the vehicle which struck the unlighted parked truck was not keeping a proper lookout and was not attentive to his driving duties, and he did not see what he should have seen and took no steps or action to avert the collision.
Finally, the facts peculiar to the cases of Dauzat v. Kelone and Finley v. Guidroz, supra, as found by the court are so distinguishable from instant case as to make the holding therein in no way controlling of the law applicable to the instant case. In the Dauzat case, the unlighted trailer should have been seen because of its outline and contents, and the trailer in the Finley case was lighted and discernible and only momentarily stopped on the highway for the purpose of making an authorized turn.
The jurisprudence bears a wealth of cases which support the defendant's position of non-liability under the facts of this case. Particularly applicable is the case of Peats v. Martin (1961) 133 So.2d 920, and the holding of the court therein. This case is strikingly similar in facts to the case before us.
In the instant case, Mr. Hare was proceeding at a lawful rate of speed on a heavily traveled federal highway at night. The pulpwood truck, dark in color, was unusual in body configuration and constructed in such a manner as not to reflect any light projected by the Hare vehicle. While Mr. Hare did not complain of visibility being reduced because of oncoming traffic, the facts conclusively show the presence of oncoming or southbound vehicles momentarily before the collision. At the time of the collision the pulpwood truck had begun to ascend the incline and the lights from the Hare vehicle, because of topography, were not projected directly on the pulpwood truck. Mr. Hare testified that when he became aware of the truck on the highway he was a very short distance away. He applied his brakes but was unable to avoid the collision. He left skid marks of 25 to 30 feet. There were no unusual weather or road conditions such as rain, fog, smoke or other vision impairing factors present to require a reduction in speed of the Hare vehicle. Several other drivers testified they had driven for short distances on Highway 51 on the same night of this accident and had come upon this unlighted truck and but for their slow speed they, too, would have struck it; that it was impossible for them to see the truck until they came in close proximity. We find no reason for holding Mr. Hare negligent in failing to see this unlighted slow moving vehicle. Under such circumstances, Mr. Hare was warranted to presume the road ahead of him was open and unobstructed.
We find the language of the court in Peats v. Martin, supra, apropos.
"[3,4] The rule that a motorist traveling on the public highways after dark or during abnormal atmospheric conditions, such as a rainstorm or a fog which prevents him from seeing ahead, except imperfectly and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted constitutes an exception to the general rule that a motorist may assume the road is safe for travel, even at night; but this exception to the general rule is likewise subject to an exception to the effect that a motorist traveling by night is not charged with the duty of guarding against striking unexpected or unusual obstructions which he *16 had no reason to anticipate would be encountered on the highway. * * *."
Also apropos to the facts of the instant case, are Vowell v. Manufacturers Casualty Insurance Co. (1956) 229 La. 798, 86 So.2d 909; Dodge v. Bituminous Casualty Corporation, (1949) 214 La. 1031, 39 So.2d 720; Carter v. Le Blanc Lumber Co. (La.App., 1948) 37 So.2d 471; and Lynch v. Fisher (La.App., 1949) 41 So.2d 692.
Plaintiffs argue Peats v. Martin, supra, is not applicable to the facts of this case because there is a vast difference between running into the rear of a vehicle traveling in the same direction, in its proper lane even though at a slow speed, as occurred, so they contend, in the instant case, and in being suddenly confronted with a stopped vehicle in one's lane of travel. As we view it, it makes no difference in the result whether the unlighted vehicle was stopped or moving very slowly, as undoubtedly the pulpwood truck was in the instant case. For vehicles, such as Hare's being properly operated on heavily traveled hard surfaced highways of today, it is equal to the same thing, whether one comes upon a slow moving unlighted empty pulpwood truck or one stopped on the highway. For all practical purposes, we see no difference.
We find from our careful and painstaking search of the jurisprudence of this state that a motorist traveling a main highway at night, in the absence of weather, road or traffic conditions which serve to warn one of the necessity of restricted movement, may assume that the road ahead is free of obstructions and unusual objects and that it is open and unrestricted for travel. We find it is equally well settled that an unlighted vehicle, either moving, stopped or parked upon the highway at night is an unusual or unexpected obstruction.
We find the instant case falls within the purview of the above stated rule.
For the foregoing reasons, we find defendant's insured, Gerald W. Hare, free of actionable negligence in the death of plaintiffs' son. Accordingly, the judgment appealed from is affirmed at plaintiffs' costs.
Affirmed.
NOTES
[*] Due to the death of ELLIS, J., prior to rendition, this opinion is unanimously rendered by LOTTINGER, LANDRY and BAILES, JJ.