HOOD, Judge
(dissenting).
I am unable to agree with my colleagues either in their conclusion that the defendants in this case were negligent or in their finding that plaintiff was free from contributory negligence. I, therefore, respectfully dissent from their refusal to grant a rehearing in this case.
At the time the accident occurred two of the defendants’ farm trucks were being driven in a southerly direction on a rural road, one behind the other, in their proper lane of traffic, at a speed of from 15 to 20 miles per hour, and with their lights burning. The lead truck was being driven by Emile Martin and the following truck was being driven by Leroy Moton. While these two trucks were being operated in that manner, plaintiff, without any conceivable justification, crashed into the left rear of the truck being driven by Moton, then he went around that vehicle and collided with the lead truck being driven by Martin, and then after that second collision plaintiff continued down the highway 386 feet beyond the point where the second collision occurred before he brought his vehicle to a- stop. Under those circumstances, my colleagues have found that the accident resulted solely from the negligence of defendants, and that plaintiff was free from contributory negligence. I cannot concur with either of those findings.
• The majority was unable to find any negligence on the part of any of the defendants, except that it holds that “It is obvious he (the trial judge) found the defendants’ truck was not equipped with the required tail lamp,” that there is “ample testimony * * * which the trial judge could have believed” that the taillights on defendants’ truck could not be seen the required distance of 500 feet, and that “[t]he evidence clearly supports the trial judge’s conclusion that the defendant was negligent for failure to have the required tail lamps on the rear of the truck.”
The trial judge did not assign written reasons for judgment, and there is absolutely nothing in the record which I think can justify a conclusion that the trial judge made any findings at all relating to the taillights of defendants’ truck. I agree that there is no other conceivable ground upon which defendants could be found to be negligent, but the evidence presented in this case makes it equally as inconceivable that the trial court found that the taillights on either of defendants’ trucks were inadequate.
*28 My colleagues concede that defendants’ rear truck, being driven by Moton, was equipped with two taillights, one stop light and two directional signal lights on the rear of the truck. I assume that they have concluded that both of the taillights were burning at the time the accident occurred, since they acknowledge that one of the taillights was broken as a result of the accident and that the other was “still burning” some time after the collision occurred. The majority has overlooked the fact, however, that in addition to the above mentioned lights the truck being driven by Moton was also equipped with two red glcuss reflectors and with two electric clearance lights on the rear of the truck, and that the clearance lights were also burning and were visible from the rear at the time of the accident.
It is true, as noted by the majority, that the stop light and the two directional signals on the back of defendants’ truck were not burning at the time of the accident, because the driver of that truck was not in the process of stopping or turning when the accident occurred. Also, the two reflectors on the back of the truck were not “burning” because they are not even equipped with electric bulbs for lighting. The reflectors, however, are designed to reflect light from the headlights of motorists approaching from the rear, and since plaintiff said he had his headlights burning as he approached the rear of defendants’ truck he should have seen these reflectors even in the absence of the four burning electric taillights on that truck.
Plaintiff testified that there were no lights of any kind on the rear of the Moton truck and that both of defendants’ trucks were parked at the time the accident occurred. The majority has correctly rejected plaintiff’s testimony on both of those important particulars by holding that the taillights were burning and that defendants’ truck was being driven at a speed of about 15 miles per hour when the collision occurred. Actually, the uncontradicted evidence (except for plaintiff’s testimony) is that defendants’ trucks were travelling 15 to 20 miles per hour at that time.
Six witnesses testified positively that two taillights and two rear clearance lights on the Moton truck were burning and were clearly visible at the required distance by motorists approaching from the rear. The evidence shows that the left taillight, the left rear clearance light and the left rear reflector were broken as a result of the accident. At least four witnesses, in addition to the six already mentioned, confirmed the fact that the remaining unbroken taillight was still burning after the accident occurred. Among these confirming witnesses was plaintiff’s son, who testified not only that the remaining taillight was still burning, but that also the left rear clearance light was broken and that the front clearance light on the left side was still burning. A son-in-law of plaintiff acknowledged that there were four clearance lights on the Moton truck, and that he noted after the accident that one of them had been broken.
I think my colleagues seriously erred in finding that both taillights “were located behind the shield.” This indicates that the majority was under the impression that a metal shield completely covered the taillights and prevented anyone from seeing those lights, which of course was not the case at all. The witnesses stated that the taillights were located “under” the shield, meaning that the taillights were below the shield or nearer to the ground. The shield did not in any way obscure the taillights or prevent a following motorist from seeing them. The metal shield formed a part of the truck bed, and the taillights were built into the frame of the truck by the manufacturer. The license plate for the truck was located immediately under one of the tailights. Not only does the evidence show that the taillights were not obscured by the shield, but it is unreasonable to assume that a vehicle of that type would be manufactured in such a manner that the taillights and the license plate could not be seen.
*29 The majority erred further, I think, in concluding from the testimony of the state trooper alone, ignoring all of the other evidence, that the taillights on the Moton truck could not be seen at a distance of 150 feet or more. The state trooper viewed the vehicle after the accident had occurred. One taillight, one rear clearance light and one reflector had been broken or destroyed as a result of the accident, so in viewing the rear of the truck later the trooper did not have as many lights to view as plaintiff had before the collision occurred. Also, the trooper walked back 150 feet behind the truck and viewed it from that distance. In doing so, he did not have the benefit of automobile headlights shining on the truck, as did plaintiff, and thus he could not get a reflection from the remaining, unbroken reflector which was still on the truck. And, further, the evidence indicates that the headlights of the Moton truck had been turned off and its “parking lights” were on when the trooper investigated, and that may have had some effect on the other lights.
In any event, I think the overwhelming, positive evidence of many witnesses to the effect that the four lights on the rear of the truck were plainly visible at great distances within minutes before the accident is more reliable than the statement of one witness who viewed the truck after some of the lights had been destroyed and under entirely different circumstances than those confronting plaintiff.
In my opinion, the evidence does not justify a conclusion that either of defendants’ trucks was inadequately lighted. If the taillights did not meet the requirements of LSA-R.S. 32:304, then I believe that such failure was not a proximate cause of the accident because plaintiff could and should have seen the Moton truck in ample time to avoid an accident even if the latter had had no taillights at all. I think the majority has erred in holding that defendants were negligent.
The finding of the majority which disturbs me the most, however, is its conclusion that plaintiff was free from contributory negligence. In so holding, my colleagues have ignored or, if the opinion stands, they will have overruled all of the settled jurisprudence of all of the appellate courts of this state relating to the duty which rests upon the night driver of a motor vehicle on our public highways.
Assuming the facts to be as found by the majority, with all uncertainties resolved in plaintiff’s favor, the conclusion is inescapable that plaintiff was grossly negligent in failing to observe the two trucks ahead of him in ample time to avoid an accident.
The facts, as found by the majority and construed most favorably to plaintiff, are that defendants’ trucks were being driven at a speed of “about 15 miles per hour in their proper lane of traffic,” on a two lane rural road, and with at least one taillight burning. This taillight, according to the majority, was not visible to the following motorist at a distance of 150 feet or more, but it was visible to him at a lesser distance. Plaintiff was driving his pickup truck at a speed of 30 to 35 miles per hour as he approached defendants’ truck from the rear. The majority found that plaintiff did not see the truck “until it was too late for him to stop.” Plaintiff testified, “I was right on it when I see it,” and that he did not see the burning taillight on the truck at any time, even though the majority has found that it was burning and was visible within 150 feet.
After plaintiff saw the truck, and according to his own testimony, he did not apply his brakes and he made no attempt to reduce his speed. He stated that he tried to pass the Moton truck but that as he did so an approaching automobile forced him to “draw back.” Upon observing this approaching motorist for the first time after he had entered the passing lane, plaintiff testified that he still did not apply his brakes but he simply turned into the left *30 rear side of the Moton truck intending to “squeeze” between that truck and the approaching motorist who, he says, passed him on his left side. All five of the other eyewitnesses to the accident stated that there was no other approaching automobile at the time of the accident, and the evidence shows that if there had been such a motorist he could not have passed on plaintiff’s left, as related by plaintiff, since the latter’s pickup truck and the Moton truck were side by side blocking both lanes of this narrow country road.
After striking the Moton truck, plaintiff glanced off of that truck and he continued on in his left or the passing lane of traffic, passed the truck he had just run into' and he then overtook and crashed into defendants’ forward truck. After this second collision, plaintiff continued to travel in his left lane of traffic around and past defendants’ lead truck a distance of 386 feet beyond the point of the second collision, as. measured by the state trooper, before he brought his pickup truck to a stop on the right hand side of the road. Both of defendants’ trucks were brought to a stop shortly after the collision, the lead truck stopping about 150 feet before it reached the point where plaintiff’s vehicle had come to rest.
The state trooper who investigated the accident shortly after it occurred detected the smell of intoxicating liquor on plaintiff’s breath, and plaintifff admitted to him that he had had “one beer.” At the trial plaintiff conceded that he had consumed “one beer” at his son’s home a few minutes before the accident occurred.
The majority overlooked or failed to consider the fact that at the time the accident occurred the headlights of the Moton truck were burning, and those headlights brightly illuminated the Martin truck which was immediately ahead of it. If plaintiff had been maintaining a proper lookout I think he would have seen the Moton truck silhouetted against the lead vehicle in ample time to avoid the accident, even if there had been no lights at all on the back of the Moton truck.
The evidence establishes, and plaintiff does not dispute the fact, that defendants’ forward truck, driven by Martin, was equipped with proper burning taillights, and that the forward truck was brightly illuminated by the headlights of the Moton truck. Plaintiff was not injured as a result of the accident, and there is nothing in the record to indicate that he lost control of his truck or that the brakes or steering mechanism would not function after the collision occurred. No explanation has been offered as to why plaintiff did not see and avoid striking the lead truck after he had collided with and had passed the rearmost truck.
My colleagues have accepted plaintiff’s testimony to the effect that he did not see defendants’ truck “until it was too late for him to stop,” but they have failed to consider the fact that plaintiff did not have to stop in order to avoid an accident. All he had to do was to reduce his speed slightly. He was driving at a speed of 30 to 35 miles per hour, and defendants’ trucks were traveling at a speed of 15 to 20 miles per hour. According to the stopping distance charts which I have been able to find, plaintiff should have been able to bring his vehicle to a complete stop within a distance of less than 117 feet, including reaction time, after he observed the danger. According to the majority’s findings, plaintiff should have observed the burning taillight on the truck ahead of him before he reached a point within 117 feet of that truck. If he had been maintaining a reasonable lookout, therefore, he would have seen the truck ahead in plenty of time to enable him to bring his vehicle to a complete stop before he reached a point where the truck had been when it was first observed. Here, of course, the Moton truck was also moving in the same direction he was traveling, and that would have allowed plaintiff even a greater distance within which to bring his vehicle to a stop. Also, it was not necessary for plaintiff to stop his pickup *31 truck at all. As I have already stated, all he had to do was to slightly reduce his speed and the accident would have been avoided. I think the accident would not have occurred if plaintiff had merely taken his foot off the accelerator when he is legally bound to have seen the truck he was overtaking.
It is appropriate to note here that both of defendants’ trucks were loaded with crates of sweet potatoes. The crates were new, however, and they were of a light color which should have reflected light very easily. It is significant that the majority has not found that either of defendants’ trucks were dark colored, or that they were difficult to see, or that either of said trucks constituted an unusual or extraordinary obstruction in the road.
My colleagues have stressed the nro-visions of LSA-R.S. 32:304, subd. A which require that every motor vehicle shall be equipped with one tail lamp visible from a distance of 500 feet to the rear. They, however, have overlooked tne fact that the Highway Regulatory Act also places a duty on the operator of a motor vehicle at night to have adequate headlights.
LSA-R.S. 32:322, subd. A provides that whenever a motor vehicle is being operated on a roadway at night the driver must use headlights “of sufficient intensity to reveal persons and vehicles at safe distance in advance of the vehicle.” And, LSA-R.S. 32:321(2) provides that “There shall be a lowermost distribution of light, or composite beam, so aimed and of such intensity to reveal persons and vehicles at a distance of at least 150 feet ahead * *
If plaintiff’s headlights were adequate and were burning, as he says they were, then his headlights alone should have revealed defendants’ truck when it was at “a distance of at least 150 feet ahead.” His failure to observe the vehicle when it was revealed by his headlights constitutes negligence which clearly is a proximate cause of the accident.
In Geoghegan v. Greyhound Corporation, 226 La. 405, 76 So.2d 412 (1954), our Supreme Court stated the applicable law as follows:
“ ‘A motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision.’ Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238. It is negligence to drive an automobile at a greater rate of speed than is prudent under the circumstances. Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148.”
The same court, in Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945), said:
“ ‘It is also negligence for one to drive a motor vehicle at a greater rate of speed than is prudent under the circumstances. Act 286 of 1938, sec. 3, Rule 4 (a); Le Blanc v. Checker Cab Co., Orleans, 8 La.App. 472, 474; Overstreet v. Ober, 2 Cir., 14 La.App. 633, 130 So. 648, 650; Ledet v. Gottleber, La.App., Orleans, 143 So. 71, 72. In our opinion, when a motorist’s view ahead is obstructed by a curve in the road or any other obstruction, he should drive at a speed which will permit him to stop before arriving at any vehicle, person, animal or obstruction in the road which may come into his view ahead of him as he travels and which may be either stationary, moving in the same direction he is moving, or crossing the road. For him to drive at a greater rate of speed than that under such circumstances is imprudence and negligence.’ Russo v. Aucoin, La.App., 7 So.2d 744, 748. Also see: Forst v, Travelers Ins. Co., La.App., 15 So.2d 100.”
“The fact that an obstruction is unlawful cannot excuse a motorist from exer *32 cising the degree of care required of him.”
And, in Demerest v. Travelers Insurance Company, 234 La. 1048, 102 So.2d 451 (1958) the Supreme Court again applied the same rule, using the following language:
“ ‘A motorist has not the right to assume that his course of travel is free of danger or obstruction, in the absence of his ability to see clearly ahead. If he does so assume and continues to travel as though he knew there was perfect clearance ahead, he does so at his own risk and peril.’ See also Ledet v. Gottleber, La.App., 143 So. 71; Hobbs v. Employers’ Liability Assurance Corporation, La.App., 188 So. 191 and Odom v. Long, La.App., 26 So.2d 709.”
Following and applying the rule which was stated by the Supreme Court in the above cited cases, and many others, we held in Lewis v. Quebedeaux, 134 So.2d 93 (La.App. 3d Cir. 1961, cert. denied):
“The law is settled to the effect that a motorist is held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision. Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238; Culpepper v. Leonard Truck Lines, Inc., 208 La. 1084, 24 So.2d 148; Geoghean v. Greyhound Corp., 226 La. 405, 76 So.2d 412; McCandless v. Southern Bell Tel. & Tel. Co., 239 La. 983, 120 So.2d 501; McGee v. Southern Farm Bureau Casualty Co., La.App. 3 Cir., 125 So.2d 787.”
The same rule has been cited and applied consistently in numerous cases by all of our appellate courts. A few of these cases are: King v. Risdon & W. E. Holoman Lumber Company, 76 So.2d 548 (La.App. 2d Cir. 1954 cert. denied), Ardoin v. Southern Farm Bureau Casualty Ins. Co., 133 So.2d 129 (La.App. 3d Cir. 1961); Lewis v. Quebedeaux, 134 So.2d 93 (La.App. 3d Cir. 1961); Carriere v. Aetna Casualty Company, 146 So.2d 451 (La.App. 4th Cir. 1962); Eubanks v. Wilson, 162 So.2d 842 (La.App. 3d Cir. 1964, cert. denied 246 La. 576, 165 So.2d 479); Brown v. Rousseve, 163 So.2d 849 (La.App. 4th Cir. 1964); Thibodeaux v. Jack’s Cookie Corporation, 169 So.2d 918 (La.App. 3d Cir. 1964, writ refused 171 So.2d 479); Larocca v. Aetna Casualty Insurance Company, 181 So.2d 482 (La.App. 1st Cir. 1965); Broussard v. State Farm Mutual Automobile Ins. Co., 188 So.2d 111 (La.App. 3d Cir. 1966, cert. denied 249 La. 713, 190 So.2d 21).
My colleagues refer to this rule as “the assured clear distance rule,” but they state that there has been “a continuous departure” from it in our jurisprudence. In the instant suit they have undertaken to completely abolish that rule. If the majority decision in the instant suit stands, then the above mentioned rule will be overruled. This is the only case I have found where any court has gone so far.
The majority feels that this radical departure from our existing law is justified by the decisions rendered in Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909 (1956); Sittig v. Southern Farm Casualty Company, 198 So.2d 514 (La.App. 3d Cir. 1967); Shively v. Hare, 189 So.2d 12 (La.App. 1st Cir. 1966); and Woods v. Employers Liability Assurance Corporation, 172 So.2d 100 (La.App. 1st Cir. 1965). In my opinion none of the cited cases support the decision which has been rendered here.
The Vowell case, supra, is one of a line of cases (some of which are cited in Lewis v. Quebedeaux, supra) which specifically recognises the above stated "assured clear distance rule,” but holds that the driver whose vision is obscured may be exonerated from the charge of negligence if the object which he strikes is of such an unusual and extraordinary nature that he had no reason to anticipate he vtiould encounter it on the highway. The court in that case, as in all cases where this exception to this general rule is applied was very careful to point *33 out the unusual, extraordinary and unexpected nature of the obstruction which the driver encountered. In the instant suit, unlike the facts in the Vowell case, plaintiff’s vision was not obscured, defendants’ truck was not an unusual or extraordinary obstruction in the road, and certainly plaintiff cannot seriously contend that he had no reason to anticipate that he would encounter a farm truck driving properly in its lane of traffic on a farm road.
In the Sittig case, supra, which we decided recently, the plaintiff driver collided with a parked, unlighted truck facing in the wrong direction in plaintiff’s lane of traffic. The majority found that plaintiff’s lights “would not pick up the darkened truck” and that “his vision was obscured by the bright lights of oncoming traffic.” Applying the exception to the general rule as set out in the Vowell case, the majority concluded that the plaintiff should be excepted from that rule and exonerated from the charge of contributory negligence because he collided with an “unexpected and obscured object which he could not reasonably have anticipated or perceived sooner.” I dissented from the majority decision in that case because I felt that the circumstances were not of such an unusual or extraordinary nature as to justify an exception to the general rule. Nevertheless, I think the majority, even in that case, recognized the long established general rule that the driver of a motor vehicle is under a duty to maintain a reasonable lookout at all times and to reduce his speed, when his visibility is restricted by darkness or any other cause, to such an extent that he can bring his vehicle to a stop within the range of his vision.
The case of Shively v. Hare, supra, is another case in which our brothers of the First Circuit Court of Appeal specifically recognized the rule that a motorist “must guard against striking objects in the road with which he may be suddenly confronted,” but they applied the exception to that rule, citing the Vowell case as authority, because of the “unusual and unexpected” nature of the obstruction. The accident involved there occurred on U. S. Highway 51, a heavily traveled federal highway (not a narrow rural road as in the instant suit), the defendant was driving 50 to 60 miles per hour, and he collided with an unlighted, empty pulpwood truck which was being driven at a speed of “from five to fifteen miles per hour.” The court pointed out that the pulpwood truck was “dark in color, was unusual in body configuration and constructed in such a manner as not to reflect any light projected by the Hare vehicle.” It also observed that the driver of the following automobile was faced with oncoming traffic momentarily before the collision, and that there was an incline in the highway which prevented the lights from the Hare automobile from projecting on and disclosing the pulpwood truck ahead immediately before the collision occurred. The court then concluded that the obstruction was of such an “unusual or unexpected” nature that the defendant driver should be excepted from the general rule.
The case of Woods v. Employers Liability Assurance Corp., supra, is another case in which the Court specifically recognized the “assured clear distance rule,” but found that because of the unusual and extraordinary circumstances which existed there the driver of the moving vehicle on U. S. Highway 190, one of the heaviest traveled thoroughfares in the state, should be absolved from negligence in running into the parked, unlighted vehicle on that highway.
In the instant suit defendants’ truck did not constitute an unusual, extraordinary or unexpected obstruction in the rural road on which plaintiff was traveling. It was not dark colored and it would clearly reflect the headlights of plaintiff’s approaching vehicle. It was equipped with two red glass reflectors which are especially designed to reflect such lights, and it had at least one taillight which was burning and was visible to plaintiff in ample time to have permitted him to avoid an accident. Defendants’ truck was silhouetted against *34 the lights which were immediately ahead of it, it was traveling at a speed only a little slower than the speed at which plaintiff claims to have been traveling, plaintiff was not blinded by the lights of approaching traffic, there was no incline in the road or any other circumstance which could excuse plaintiff from seeing the truck ahead of him long before he says he did, and according to plaintiff’s testimony he was driving at a relatively slow speed which should have enabled him to avoid the accident easily if he had exercised only the slightest degree of care.
As I understand the opinion rendered in this case, the majority does not recognize the general rule stated and applied in all of the cases hereinabove cited, requiring a motorist to exercise reasonable care in maintaining control over the vehicle he is driving, and they do not base their decision on a finding that there were unusual and extraordinary circumstances which .except this case from the general rule. They simply hold that a night driver on any road, including a rural or farm road, is under no duty to maintain a lookout for other vehicles which may be traveling ahead of him on the same highway but at a slower rate of speed, and he will be held to be free from negligence if he crashes into the rear of any such slower moving automobile or truck, unless the forward vehicle is equipped with burning taillights which fully meet all of the requirements of the laws of the state. The principal and heaviest duty, according to the majority, rests upon the forward driver to stay out of the way of a faster moving following vehicle or to give clear warning to the following motorist that he is not driving fast as the law may permit him to drive. I do not agree with the majority’s conclusion that this is the law, or that it ought to be the law.
On the same day the majority opinion was rendered in the instant suit, our court rendered another decision which cannot be reconciled with this one. In Wortham v. Owens et al., 200 So.2d 781 (La.App. 3d Cir. 1967, rendered June 29, 1967), we reversed the trial court and held that defendant Owens, a night motorist, was negligent and was liable in damages for failing to see a black calf standing in or walking across the road ahead of him. The motorist in that case was driving at about the same speed as was plaintiff in the instant suit, he had his headlights on bright and thus was exercising a greater degree of care than was plaintiff here, the accident occurred on a rural road as in this case, Owens skidded 30 feet in an effort to stop while plaintiff here admittedly made no effort at all to reduce his speed, the black calf in that case was not equipped with at least one taillight and with two red glass reflectors as was defendants’ truck in this case, the animal was not of a light color which naturally reflected light, the calf was not silhouetted against lights which were ahead of it as was defendants’ truck here, the calf was not moving away from the Owens vehicle at a speed which was only a little slower than the speed at which Owens was traveling, Owens did not have as much reason to anticipate coming upon a calf on the road as plaintiff had reason to anticipate coming upon a farm truck on a rural road, Owens had not been drinking intoxicating liquor before the accident, and after he ran into the calf Owens did not continue on and collide with another obstacle ahead of it and then travel 386 feet before he brought his automobile to a stop. Yet, in the cited case the majority found that Owens was negligent in running into the black calf, while in the instant suit it held that plaintiff Stelly was free from negligence.
I think the plaintiff in this case was grossly negligent in the particulars which I have mentioned, that his negligence was a proximate and contributing cause of the accident, and that he thus is barred from recovery because of his contributory negligence.
For these reasons, I respectfully dissent from the refusal by the majority to grant a rehearing.